FELLOWS & a. v. ALLEN, *Ex'x.*

Neither the death of the testatrix's mother, in whose family she resided, nor the death of one or all the witnesses to the will, nor the fact that one of the witnesses was subsequently the husband of the testatrix, nor that a sister had, on her marriage, destroyed her will before made

in favor of the testatrix, nor that the will of the testatrix, made twenty years before her death, was after her death found in an insecure place, among waste and worthless papers, will as a matter of law operate as a revocation of the will, or render it invalid.

In New Hampshire a woman's ante-nuptial will is not revoked by her marriage.

APPEAL, from a decree of the probate court, allowing the will of Elizabeth R. Tennant. The defendant, who presented it for probate, is named executrix in the will. The plaintiffs are nieces of the testatrix, and claim as two of her heirs-at-law. The instrument bears date March 19, 1860, and is signed by the maiden name of the deceased, Elizabeth R. Fellows, who at that time was unmarried. In 1874 she married Arthur Tennant, with whom she resided until her death, in October, 1879. He was appointed administrator upon her estate, and died in April, 1880, when another administrator was appointed. In September, 1880, the instrument in dispute was found, with some old tax receipts and other papers of no value, in a pasteboard box, in the fourth drawer of an old bureau, in the house where the deceased had resided from 1860 to her death. Her valuable papers were kept in a more secure place. At the time the will was executed the testatrix lived with her mother and the defendant, her sister. Her mother died before she did. Her sister was married in 1862, and then destroyed a will which she had before made in favor of the deceased. It did not appear that any one knew of the existence of the will in dispute after the marriage of the defendant, in whose handwriting the will is. Two of the witnesses to the will, of whom one was the husband of the deceased, are dead. The deceased left surviving her two sisters, a brother, and children of two deceased brothers. The plaintiffs claim a revocation of the will by reason of a change of circumstances of the testatrix, and of her marriage subsequent to the execution of the will.

*Wiggin & Fuller*, for the plaintiffs.

*Marston & Eastman*, for the defendant.

ALLEN, J. The will was not made invalid because one of the subscribing witnesses subsequently became the husband of the testatrix. It was sufficient if he was a credible witness at the time of the execution of the will. *Lord* v. *Lord*, 58 N. H. 7. And the fact that one or more of the witnesses were dead at the time the will was presented for probate did not render it invalid, for its due execution could be proved by any competent evidence. 2 Red. Wills 34; *Dean* v. *Dean*, 27 Vt. 746. The death of the mother of the testatrix before her own death, and the change in her family relations by the marriage of her sister, could not, of

themselves, work a revocation of the will. If her mother was a legatee, her death could only change the direction of the legacy, or, for want of a residuary legatee, leave so much property unbequeathed. The sister's destruction of her will made in favor of the deceased was not a change in the latter's estate, and, in the absence of any act of her own, not a change of circumstances which in law revoked her will. Change in a testator's estate by loss or conveyance, if the devises or bequests are specific, may operate as a revocation of the will *pro tanto* from necessity; but so long as there remains anything upon which the will can operate, there can be no revocation as matter of law, except by the mode pointed out by the statute. *Graves* v. *Sheldon,* 2 D. Chip. 71; *Boylan* v. *Meeker,* 4 Dutcher 274.

It is provided by statute (G. L., *c.* 193, *s.* 14) that "No will or clause thereof shall be revoked unless by some other valid will or codicil, or by some writing executed in the same manner, or by cancelling, tearing, obliterating, or otherwise destroying the same by the testator, or by some person by his consent and in his presence." Section 15 of the same chapter is, that "The preceding section shall not control or affect any revocation of a will, implied by law, from any change in the circumstances of the testator, or his family, devisees, legatees, or estate, occurring between the time of making the will and the death of the testator." In this case there was no revocation by a subsequent valid will or codicil, nor by a writing executed like a will, nor by cancelling, tearing, or obliterating. It does not appear from the case that there was any destruction of the will by the testator. The fact that it was found among worthless papers, in an insecure place, "in the fourth drawer of an old bureau," while the valuable papers of the testatrix were kept by her in a place of greater security, was evidence of inattention and carelessness about the instrument, and perhaps of abandonment. Revocation must include the intention of the testator, but mere intention without some act is not effective to destroy a will. 2 Jar. Wills 129, 130, 131; 1 Red. Wills 331, 332; *Mundy* v. *Mundy,* 15 N. J. Eq. 290; *Gains* v. *Gains,* 2 A. K. Marsh. 190; *Jackson* v. *Betts,* 9 Cow. 208; *Hise* v. *Fincher,* 10 Ired. 139; *Clarke* v. *Scripps,* 22 E. L. & Eq. 627. *Clingan* v. *Mitcheltree,* 31 Penn. St. 25. There was no destruction of the testatrix's will within the meaning of the statute.

At common law a married woman had no power to dispose of real estate by will, nor of personal estate, except by the consent of her husband given at the time, and continued till the probate of the will. 2 Jar. Wills 129; 1 Red. Wills 21, 22, 23; *Tucker* v. *Inman,* 4 M. & G. 1049, 1076; *Marston* v. *Norton,* 5 N. H. 205; *Cutter* v. *Butler,* 25 N. H. 343, 350. Her incapacity to make a valid will prevented her from altering a will made before marriage, either by codicil or the substitution of a new will in its place, and also from recognizing it as her valid will. That feature of a will which makes it ambu-

latory in character until the death of the testator was destroyed, and a woman's ante-nuptial will was revoked by her marriage. *Forse & Hembling's Case*, 4 Coke 60, 61; *Hodsden* v. *Lloyd*, 2 Br. Ch. C. 534; *Morton* v. *Onion*, 45 Vt. 145. The incapacity of a married woman to make a will arose at common law from her husband's marital rights in the control of her property. When those rights did not exist, or were excluded, the incapacity ceased, and the wife could make a valid will. *Cutler* v. *Butler*, *supra*; *Miller* v. *Phillips*, 9 R. I. 143; *Carey's Estate*, 49 Vt. 246. By the Rev. Stats., *c.* 149, *s.* 3, it was provided that a married woman, when entitled to hold property in her own right and to her separate use, might dispose of it by will as if she were sole and unmarried. By the statute of 1845 a married woman was enabled to dispose of her real estate by will, subject to any rights acquired by the husband by the marriage contract; and in 1846 it was enacted by statute that married women should have the same rights as they would if unmarried as to all property secured to their separate use by a written ante-nuptial contract, and all property conveyed or devised to them for their separate use after marriage. Married women thereby became entitled to dispose of property so held, by will. By the laws of 1860, *c.* 2342, the testamentary capacity of married women was extended so as to embrace all her estate, subject only to the husband's right of curtesy and distribution. The statutes on the subject have remained substantially without change to the present time. The incapacity of a married woman to make a will having been removed by these statutes, and she having become fully empowered to dispose of her own property in that way, no reason remains why her will made before marriage should, by mere force of the marriage contract, be revoked. If revoked, the testatrix could make another like it after marriage. The law does not operate to destroy and restore the same thing by the same breath. The testamentary incapacity of the married woman destroyed her pre-marital testament. The law having removed the incapacity which operated as the destroying power, the will made before marriage remains unrevoked by that change in the testator's life.

*Decree affirmed.*