LOUIS E. ROANE *vs.* ELIZABETH M. HOLLINGSHEAD, Executrix and Legatee, and MARGARET SUNSTROM.

*Secs. 1 and 2 of Art. 45 of the Code—Acts of 1890, ch. 294, and 1892, ch. 267—Will of Féme sole as Affected by her Marriage.*

By sections 1 and 2 of Article 45 of the Code, as respectively amended by the Acts of 1892, ch. 267, and 1890, ch. 394, it is provided that the property acquired or owned by a married woman, both before and after marriage, "by purchase, gift, grant, devise, bequest, descent, in a course of distribution, or in any other manner, * * * * she shall hold for her separate use, with power of devising the same as fully as if she were a *féme sole,*" &c. HELD :

That this legislation removed every common law disability to which a *féme covert* was formerly subjected, with respect to making a valid will, and a woman's marriage no longer revokes a will previously made by her.

APPEAL from the Orphans' Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., ROBINSON, BRYAN, FOWLER, ROBERTS, and MCSHERRY, J., for the appellant, and submitted for the appellees.

*William A. Fisher,* (with whom were *Paul M. Burnett,* and *William Reynolds,* on the brief,) for the appellant.

*Richard R. Battee,* and *William Pinkney Whyte,* for the appellees.

McSHERRY, J., delivered the opinion of the Court.

On the ninth of December, 1889, Rachael Hollingshead, then being a *féme sole,* made and executed her last

will and testament in due form of law, and on the twelfth of August, 1891, she married Louis E. Roane. On May the thirteenth, 1892, she died. Her will was propounded for probate in the Orphans' Court of Baltimore City, and a caveat was thereupon filed by her surviving husband, wherein he claimed that the marriage had operated to revoke the will previously made. The single question involved, then, is, whether the marriage of a woman revokes a will made by her whilst she was single; and this is a question of first impression in Maryland.

At the common law, since the decision of *Forse and Hembling's Case* in 1589, 4 *Co. Rep.*, 60, marriage revoked a woman's will previously made. *Hodsden vs. Lloyd*, 2 *Bro. Ch.* 534; *Doe, dem. Hodsden vs. Staple*, 2 *T. R.*, 684; 2 *Green. Ev.*, sec. 684; 1 *Jar. on Wills*, ch. 7. And this was so because marriage destroyed the ambulatory character of the will, and without that feature the paper ceased to be a will at all. The marriage destroyed the ambulatory character of the will, because by the marriage the wife was deprived of the power to devise her real estate, and was prevented from bequeathing her personal property, except by the consent of her husband given at the time of the execution, and continued until the probate of the will. 2 *Jarm. on Wills*, 129. Her incapacity to make a will after marriage prevented her from altering or revoking one made before marriage, and it was this incapacity, and nothing else, that constituted the reason upon which the common law rule as to revocation by marriage was founded. This incapacity arose out of her husband's marital rights to control her property. When those rights did not exist or were excluded, as in the execution of a power of appointment, the incapacity ceased, and the wife could, notwithstanding her coverture, make a valid will. *Cutter vs. Butler*, 25 *N. H.*, 343; *Miller vs. Phillips*, 9 *R. I.*, 143. It is obvious, therefore,

that the rule does not and never did apply to a case where the reason of the rule was absent.

By *sections* 1 *and* 2 *of Art.* 45 *of the Code,* as respectively amended by the *Acts of* 1892, *ch.* 267, and 1890, *ch.* 394, it is provided that the property acquired or owned by a married woman, both before and after marriage, "by purchase, gift, grant, devise, bequest, descent, in a course of distribution, *or in any other manner* * * * she shall hold for her separate use, with power of devising the same as fully as if she were a *féme sole,* &c." This legislation removed every common law disability to which a *féme covert* was formerly subjected, with respect to making a valid will. She was placed by it so far as her capacity to make a will is concerned, upon exactly the same footing as a *féme sole.* She can revoke one already made, and she may by will dispose of her property against the wishes of her husband, and even to his entire exclusion. The statutes clothe her with full and absolute testamentary power over her own property, no matter how that property was acquired, and give to her husband no authority to restrict her exercise of it. If under these circumstances her marriage operates to revoke her will made before marriage, the revocation would be idle and utterly fruitless, because the moment afterwards she could confessedly make a new and valid will in identically the same terms as the revoked one. It was, as we have said, only because she could not after marriage execute a will, or a revocation of one previously made, that the common law annulled her will upon her marriage, and it would be exceedingly strange if, after the removal of her disability in this respect the consequence of that disability should still continue. Upon principle, therefore, it would seem to be clear that when the statutes clothed her with unrestricted power to make a valid will, as fully as though she were a *féme sole,* they necessarily struck down, at the same time, the

results which depended on her former incapacity to make a will at all. This conclusion is fully supported by many well considered cases.

In Illinois the Statute of Wills of 1845 provides that married women shall have power "to dispose of their separate estate, both real and personal, by will or testament in the same manner as other persons." By the Act of 1861 entitled "An Act to protect married women in their separate property," all the property of a married woman is made her separate property. "Such being the case," say the Court *In Re Tuller, dec'd,* 79 *Ill.,* 99, "then, that under the statute of 1861, all of the property of a married woman is made her separate estate, we know no sufficient reason why, since the Act of 1861, the statute of 1845 giving to married women the power to dispose of their separate estate by will, should not have operative effect in respect to all of a married woman's property, and be construed as enabling her to dispose of all her property by will in the same manner as other persons. The reason, then, for holding the will of a *féme sole* to be revoked by marriage would no longer exist, as the marriage would not destroy the ambulatory nature of the will, but still leave it subject to the wife's control."

In Wisconsin the laws of 1850, ch. 44, secs. 1–3, and 1859, ch. 91, sec. 2, gave a married woman the absolute power to dispose of her property by will. "The rights and powers" say the Court in *Will of Ward,* 70 *Wis.,* 256, "thus secured to married women by the statutes remove every reason upon which the common law rule of revocation by such subsequent marriage was based, and hence such rule by implication is removed by the same statutes. The reason of the rule having ceased to exist, the rule itself also ceased."

By the revised statutes of New Hampshire, ch. 149, sec. 3, it was provided that a married woman when en-

titled to hold property in her own right and to her own separate use, might dispose of it by will as if she were sole and unmarried, and by subsequent Acts of 1860 her testamentary capacity was extended so as to embrace all her estate, subject only to the husband's right of courtesy and distribution. In *Fellows vs. Allen*, 60 *N. H.*, 439, it was held that: "The incapacity of a married woman to make a will having been removed by these statutes, and she having become fully empowered to dispose of her own property in that way, no reason remains why her will made before marriage should, by mere force of the marriage contract, be revoked. If revoked, the testatrix could make another like it after marriage. The law does not operate to destroy and restore the same thing by the same breath. The testamentary incapacity of the married woman destroyed her premarital testament. The law having removed the incapacity, which operated as the destroying power, the will made before marriage remains unrevoked by that change in the testator's life." See also *Noyes, et al. vs. Southworth*, 55 *Mich.*, 173; *Morton, et al. vs. Onion*, 45 *Vermont*, 145; *Emery, Appellant*, 81 *Maine*, 275.

There was at one time considerable dispute in the English Courts as to the true ground upon which marriage and the birth of issue effected the revocation of a will. In *Baldwin, et al. vs. Spriggs, et al.*, 65 *Md.*, 373, this Court adopted the ground assigned by Lord KENYON in *Doe, dem. Lancashire vs. Lancashire*, 5 *T. R.*, 49, and subsequently followed by Lord ELLENBOROUGH in *Kenebel vs. Scrafton*, 2 *East*, 534, and approved by fourteen out of the fifteen Judges of England in *Marston vs. Roe, dem. Fox*, 8 *Adol. & Ell.*, 14—namely, that marriage and the birth of issue effected a revocation because of the tacit condition annexed to the will *when made*, that it should not take effect if there should be a total change in the situation of the testator's family. It has been insisted, in

Roane *vs.* Hollingshead and Sunstrom.

the case at bar, that the rule that marriage alone re-voked the will of a woman, stands or ought to stand on the same ground as that assigned by Lord KENYON in the case of marriage and the birth of issue. But it is apparent at once that the two classes of cases are clearly distinguishable. It is not because marriage worked a total change in the testatrix's family that marriage revoked a woman's will—but it was, as we have already said, because she had, after marriage, no longer any testamentary capacity. Marriage alone never did revoke the will of a man, but marriage and the birth of issue did, because the will *when made* was made with the tacit condition that it would not take effect upon such a contingency coming to pass. The reasons upon which the two doctrines were founded are entirely distinct, and neither can be substituted for the other without confounding and confusing separate and independent principles.

The Orphans' Court of Baltimore City having reached the conclusion that the will in controversy was unrevoked, admitted it to probate, and as we concur in their action, we will affirm the order appealed from.

*Order affirmed, with costs.*