(4 Misc. Rep. 512.)

### In re BURTON'S WILL.

(Surrogate's Court, Otsego County. July, 1893.)

WILLS—REVOCATION—MARRIAGE.

After a married woman had made a will the marriage was dissolved, and she married again. _Held_, that 2 Rev. St. p. 64, § 44, providing that "a will executed by an unmarried woman shall be deemed revoked by her subsequent marriage," did not apply to such case, and the will was not revoked by the second marriage.

Proceeding for the probate of the will of Anna E. Burton, deceased. Granted.

Charles T. Brewer, for proponent.
L. J. Arnold, special guardian of Julia K. Miller.
W. H. Bunn, for Whitney J. Burton, contestant.

TENNANT, S. Anna E. Burton died on the 18th day of May, 1893, the owner of personal property amounting to about $2,600, leaving a husband, the contestant, and one child by a former marriage, Julia K. Miller, who is an infant 19 years of age. She left an instrument in writing, bearing date the 3d day of July, 1891, now offered for probate as her will, by which substantially all of her property is bequeathed to her daughter, Julia K. Miller. The deceased was married to one William P. Miller on the 9th day of September, 1868, and remained his lawful wife until the 20th day of May, 1892, when the marriage was dissolved by a judgment of the supreme court of the state of New York in her favor. Afterwards, on the 30th day of May, 1892, the deceased was married to the contestant, Whitney J. Burton. The only issue born of either marriage is the said Julia K. Miller. The instrument in question was executed by the deceased when she was a married woman, the wife of William P. Miller, her first husband. Indisputably the paper propounded was executed in the manner and with all the formalities prescribed by the statute, and the deceased was then of sound mind, in every respect competent to execute the same, and was not under any restraint or undue influence. The contestant insists that the will was revoked by the subsequent marriage of the deceased to him, and his contention is founded solely upon the statute, which provides as follows: "A will executed by an unmarried woman shall be deemed revoked by her subsequent marriage." 2 Rev. St. art. 3, c. 6, p. 64, § 44. Counsel for contestant, conceding that when this will was executed the testatrix was a married woman, contends that because she ceased to be a married woman on the 20th day of May, 1892, by force of the judgment of the court, and during the 10 days that intervened between the rendition of such judgment and her marriage to the contestant, she was an "unmarried woman," and

therefore the case is brought within the statute above quoted, and the subsequent marriage on the 30th day of May, 1892, operated as a revocation of the will. Thus the point is presented for determination whether the statute should be given a construction to include a case where a will is executed by a married woman, who, by reason of a judgment dissolving the marriage, afterwards ceases to be a married woman, and then contracts a second marriage. Careful examination of the reported cases in this and in our sister states discloses the fact that this precise question has never been passed upon or decided. By the common law, the civil existence of a feme covert was merged in that of her husband. By the act of marriage she lost all control over her property, and hence could not dispose of it by will. The will of a feme sole being ambulatory by the common law, was deemed revoked by her marriage. The rules of the common law that a married woman could not make a will, and that the will of an unmarried woman should be deemed revoked by her subsequent marriage, were adopted in our Revised Statutes as originally enacted. Our statute had placed married women in the same category with infants and persons of unsound mind, who were absolutely disqualified from executing a will. And so, as if to avoid any incongruity or inconsistency in the legislative scheme, in view of the recognized ambulatory character of a will, it appears to have been regarded necessary to enact the statute under consideration, declaring that "a will executed by an unmarried woman shall be deemed revoked by her subsequent marriage." This is so because, but for such statute, a will executed by an unmarried woman would, after her marriage, still remain a valid one, which would practically nullify the positive statutory inhibition against a married woman disposing of her property by will. In other words, in spite of the statute which prohibited a married woman from disposing of her property by will, she might nevertheless do so if, forsooth, the will had been executed when she was a feme sole. It will be observed that when this statute in question was enacted, our statutes, following the common law, prohibited a married woman from executing a will of her property. But since the enactment of the statutory provisions above mentioned our statutes have been from time to time amended and changed, by which the property rights and powers of married women have been greatly increased, and the disabilities of coverture that formerly surrounded them almost entirely swept away. As early as the year 1867, the statute in relation to wills was amended by dropping therefrom the words "married women" as persons who were disqualified from executing wills; but section 44, providing that wills executed by unmarried women shall be deemed revoked by their subsequent marriage, was left unchanged. All statutory restraint of a married woman from executing a will has been withdrawn, and at this time she can dispose of her property in that manner as freely as she could if unmarried.

I have thus adverted to the earlier history of our statutes with respect to the power of a married woman to make a will, and the changes such statutes have undergone, in order to demonstrate that the apparent purpose of the legislature in declaring that a will

executed by an unmarried woman shall be deemed revoked by her subsequent marriage was not so much the changed relations arising from the marriage, as the then actual disqualification of a married woman from disposing of her property by will in view of its ambulatory character; and, moreover, to show that because such disqualification has been removed from a married woman, and she can now dispose of her property as she pleases by will, no cogent reason exists why her will should be refused probate upon the ground of a revocation by reason of her marriage, unless the contestant brings the case clearly within the very language of the statute. This opinion is entertained because in the present condition of our statutes, which place married women upon practically the same footing as unmarried women, the provisions of section 44, above quoted, are in a measure penal in their nature, for the reason that they create a restriction upon an undoubted statutory right of a married woman to dispose of her property by will as she pleases. Referring to the verbiage of this statute, and the inquiry demands a consideration of the words "executed" and "unmarried" as there employed. Our statute very clearly points out the manner that a will shall be "executed." It prescribes four distinct requirements that must be observed, all of which must coexist, and together form one concrete whole, essential to the due execution of a will. Obviously, the word "executed," as used in the statute now being considered, means the acts and transactions of the testator in doing the things which the statute declares are necessary for the execution and attestation of a will. The will in question was in this sense executed on the 3d day of July, 1891, by the testatrix, when she was a married woman, the lawful wife of her first husband. There can be no doubt that when she executed the will she was a married woman. Webster defines "unmarried" as meaning "not married; having no husband or no wife," and our court of appeals held, in Re Kaufman, 131 N. Y. 620, 30 N. E. Rep. 242, that the term "unmarried woman," as used in this statute, is a woman "not in a state of marriage." The words of a statute are to be taken in their ordinary and familiar sense. The court is not at liberty to obtrude into a statute a condition or qualification not found therein. It cannot speculate upon the intention of the legislature where the words are clear, and to construe an act upon its own notions of what ought to have been enacted, nor can courts correct what they deem excesses or omissions in legislation. Penal statutes must receive a strict construction. They cannot be extended by equity; that is, things that do not come within the words shall not be brought within it by construction. Potter, Dwar. St. 193, 200, 203, 204, 245, 247; Suth. St. Const. §§ 235, 237, et seq. The statute does not declare that the will of an unmarried woman shall be deemed revoked by her subsequent marriage. The language thereof is that "a will executed by an unmarried woman," etc. Nor does this statute provide that the will executed by a married woman shall be deemed revoked by her second marriage. If the legislature had intended that a subsequent marriage should revoke all wills, apt language would have been employed; for instance, not unlike the English statute.

The words "executed" and "unmarried," it must be assumed, were employed in this statute to limit its application. To adopt the contention of the contestant would contravene the fair import of the language used in the statute, and would force into it a condition not provided for by the legislature. Confessedly this will was not executed by an unmarried woman. On the contrary, it was executed by a married woman, as to which the statute is silent, with respect to the effect of her subsequent marriage thereupon. For the reasons here given, I think the paper propounded should be admitted to probate as the will of the deceased, and that the objections filed by the contestant should be dismissed, with costs to the proponent and to the special guardian to be taxed, payable out of the estate. Proper findings and a decree agreeable to the views here expressed may be prepared and submitted.