90 361
153a 416

In the Matter of the Probate of the Last Will and Testament of MARY E. McLARNEY, Deceased.

JAMES E. McLARNEY, Appellant; JAMES J. PHELAN and MICHAEL F. PHELAN, as Executors, etc., of MARY E. McLARNEY, Deceased, Respondents.

*Will — requesting a subscribing witness to sign — will of a married woman, not revoked by her remarriage — courts will not enlarge the effect of statutes.*

Upon the probate of a will, on which one of the questions raised was whether the testatrix requested Philip Furlong, one of the subscribing witnesses, to sign the will, Furlong testified that he signed at the request of an attendant upon the testatrix, which request was made in the presence of the testatrix, and that he signed in her presence, but that he did not hear the testatrix request him to sign; he also testified that he was quite hard of hearing. The other subscribing witness testified that the testatrix twice requested Furlong to sign, and that at the second request he came forward and signed the will in her presence and in that of the testatrix.

*Held,* that the proof of a request by the testatrix to the witnesses to sign was sufficient.

The will of a married woman is not revoked by her subsequent remarriage.

The original provisions of the Revised Statutes denying to certain persons the power to devise real and personal estate were changed, so far as they related to married women, by chapter 782 of the Laws of 1867, and married women now stand in this respect upon the same footing as men.

It is not the duty of courts to enlarge the effect of statutes by importing into them words and provisions which they do not contain.

APPEAL by the contestant, James E. McLarney, from a decree of the Surrogate's Court of the county of New York, entered in said Surrogate's Court on the 22d day of June, 1895, admitting the last will and testament of Mary E. McLarney, deceased, to probate, and also from the decision of the court admitting such will to probate, with notice of an intention to bring up for review upon such appeal an order vacating a stay of proceedings and an order staying administration proceedings, which orders were entered in the New York Surrogate's Court on the 1st day of October, 1894.

July 23, 1884, the testatrix, then being the wife of Edward P. Brophy, executed her will by which she disposed of her entire estate. January 29, 1889, her husband died. May 13, 1890, she wrote the following on the back of her will:

" I, Mary E. Brophy, of the City of New York, being of sound mind, do make, publish and declare this to be my last will and testament in manner and form following, that is to say :

" *First.* I direct that all my just debts and funeral expenses be paid.

" *Second.* I give unto my brothers, James J. Phelan and Michael F. Phelan, all my real estate, wheresoever and whatsoever, to have and to hold the same to them, and their heirs and assigns forever, as tenants in common. I hereby request that my said brothers will pay to St. Vincent's Hospital, also to the Little Sisters of the Poor, $500 each.

" *Third.* I give and bequeath to my cousins, Mary A. and Kate Murphy, all my furniture, carpets, wardrobe and wearing apparel, to have and to hold the same forever.

" *Fourth.* I give and bequeath to my nephews, John J. Phelan and James T. Phelan, sons of my brother, all money not invested in real estate or banks, or otherwise, to have and to hold the same forever, but the same is not to be paid to them until they respectively arrive at the age of twenty-one years.

" *Fifth.* I give and bequeath to my three nieces, daughters of my brother, all my jewelry, diamonds. All the residue and remainder of my estate I give and bequeath unto my brothers, James J. Phelan and Michael F. Phelan, to have and to hold the same forever.

" *Sixth.* I hereby nominate and appoint my brothers, James J. Phelan and Michael F. Phelan, executors of this my last will and testament, and I hereby revoke all other former wills by me made.

" In witness whereof I have hereunto set my hand and seal, at the City of New York, this 13th day of May, A. D. 1890.

" (Signed)          MARY E. BROPHY."

February 5, 1894, she married James E. McLarney, the contestant, and, April 19, 1894, she died leaving said will unrevoked. There was no issue of either marriage. May 22, 1894, the executors nominated in the will filed it in the Surrogate's Court and began proceedings to have it probated. James E. McLarney appeared and contested upon the grounds : (1) That the instrument of May 13, 1890, was a revocation of her will ; (2) that the will was revoked by the subsequent marriage of the testatrix ; (3) that the execution of

the will was not the free, unconstrained and voluntary act of the testatrix; (4) that the testatrix was not of sound mind, memory and understanding when the will was executed; (5) that the will was not subscribed, published and attested in conformity with the statutes in such cases made and provided.

There was no evidence given on the trial to support the third and fourth objections to the probate of the will. At the close of the trial all of the contestant's grounds were overruled by the Surrogate's Court and the will admitted to probate.

*James P. Campbell* and *Joseph H. Fargis*, for the appellant.

*Abel Crook*, for the respondents.

FOLLETT, J.:

We are asked to reverse the decree of the surrogate on two grounds: (1) That there is no evidence that the testatrix requested the subscribing witness, Philip Furlong, to sign as a witness; (2) that the will was revoked by the testatrix's subsequent marriage to the contestant. The witness Furlong testified that he was asked to become a witness to the will by Mary Ann Murphy, who was an attendant of the testatrix, then ill. He testified that he saw the testatrix sign the will, that he signed immediately after, in her presence, pursuant to the request of Miss Murphy made in the room and in the presence of the testatrix. He also testified that he did not hear the testatrix request him to sign as a witness, nor did he recollect that he heard her speak on that occasion. The witness testified that he was quite hard of hearing. The contestant called as a witness Michael F. Phelan, who testified that he heard testatrix twice ask Philip Furlong to become a witness to the will, and that the testatrix said that it was her last will and testament, and she wished him (Furlong) to sign as a witness, and that she said the same thing to Jane Farrington, the other subscribing witness. Jane Farrington testified that the testatrix requested her to sign as a witness, that she did so, and that she saw Philip Furlong sign. The evidence is uncontradicted that the testatrix and the two witnesses saw one another sign their names. This witness (Farrington) testified that she heard the testatrix ask Philip Furlong to sign her will, that he did not hear her, and she asked him a second time, and then he came forward and signed it. This was a sufficient publication

and a sufficient request for the witnesses to sign. Four witnesses were sworn in respect to the execution of the will, the subscribing witnesses and Mary Ann Murphy and Michael F. Phelan, and none of them gave any testimony which would justify a court in holding that the will was not duly executed, published and witnessed.

Was the testatrix's will revoked by her subsequent marriage?

The following are the provisions of the Revised Statutes relating to the powers of married women to devise and bequeath their property as originally enacted, and as now in force :

" Sec. 1. All persons, except idiots, persons of unsound mind, married women and infants, may devise their real estate by a last will and testament, duly executed according to the provisions of this title." (§ 1, art. 1, tit. 1, chap. 6, part 2, R. S.; 2 R. S. p. 56.)

" Sec. 21. Every male person of the age of eighteeen years or upwards, and every female, not being a married woman, of the age of sixteen years or upwards, of sound mind and memory, and no others, may give and bequeath his or her personal estate by will in writing." (§ 21, art. 2, tit. 1, chap. 6, part 2, R. S.; 2 R. S. p. 60.)

" Sec. 44. A will executed by an unmarried woman shall be deemed revoked by her subsequent marriage." (§ 44, art. 3, tit. 1, chap. 6, part 2, R. S.; 2 R. S. p. 64.)

These provisions remained unchanged until the passage of chapter 375 of the Laws of 1849, which empowered married women to " devise real and personal property and any interest or estate therein, and the rents, issues and profits thereof in the same manner and with like effect as if she were unmarried." By chapter 782 of the Laws of 1867 the Revised Statutes were amended by striking from section 1 above quoted the words " married women," so that the section now reads :

" Sec. 1. All persons, except idiots, persons of unsound mind and infants, may devise their real estate by a last will and testament duly executed according to the provisions of this title."

The 21st section above quoted was amended by striking out the words " not being a married woman," so that the section now reads :

" Sec. 21. Every male person of the age of eighteen years or upwards, and every female of the age of sixteen years or upwards, of sound mind and memory, and no others, may give and bequeath his or her personal estate by will in writing."

It is urged by the learned counsel for the appellant that the words " in the same manner and with like effect as if she were unmarried," contained in chapter 375 of the Laws of 1849, are words of limitation, and that the wills of married women under that statute stand in all respects on the same footing as the wills of unmarried women, fall within section 44 above quoted, and are revoked by a subsequent marriage. The answer to this seems to be that, by the amendment of the Revised Statutes in 1867, it is not provided that the wills of married women shall have the same effect only as the wills of unmarried women; but married women now have the same power to dispose of their property by will as men have. There is no restriction on their power, and the effect of their wills is in no wise limited or restricted.

This brings us to the question whether a will executed by a woman during coverture is revoked by her subsequent marriage. The statute does not so declare, which relates simply to the wills of unmarried women. It is not the duty of the courts to enlarge the effect of statutes by importing into them words and provisions not contained in them.

We think that the will was rightly admitted to probate by the surrogate, and that his decree should be affirmed, with costs. (*Matter of Burton's Will*, 4 Misc. Rep. 512 ; S. C., 25 N. Y. Supp. 824.)

-VAN BRUNT, P. J., and PARKER, J., concurred.

Decree affirmed, with costs.