# CHAPMAN *v.* DISMER.

WILLS, REVOCATION OF; HUSBAND AND WIFE.

A will made by a married woman while living separate and apart from her husband, from whom she is afterwards divorced, is not revoked merely by the fact that she subsequently remarries; *construing* Sec. 728, R. S. D. C.

No. 870. Submitted March 10, 1899. Decided April 4, 1899.

HEARING on an appeal from an order of the Supreme Court of the District of Columbia, holding a special term for Orphans' Court business admitting a last will and testament to probate and granting letters testamentary thereon. *Affirmed.*

The COURT in its opinion stated the case as follows:

The appeal in this case is from an order of the special term of the Supreme Court of this District for Orphans' Court business, admitting to probate the last will and testament of Mary C. Lee Chapman, deceased, and granting letters testamentary thereon.

The testatrix, Mary C. Lee Chapman, departed this life in this District, September 23, 1898, seized of certain real estate, and also of personal property, supposed to be of the value of $1,000, leaving a last will and testament bearing date the 25th day of February, 1893, by which she devised and bequeathed to her daughter, Dora Lee, the appellee, her entire estate, real and personal, and appointed Adelaide Thomas guardian of the said Dora Lee, until she attains the age of twenty-one years, and she constituted Charles Dismer the executor of the will. It is conceded that at the time of the execution of the will, the testatrix was a married woman living separate and apart from her then husband.

Some time after the execution of the will, the testatrix applied for and obtained a divorce from her then husband, and on or about the 9th of September, 1898, as it is alleged, she married James W. Chapman, the present appellant; and she died without having revoked her will. The will was admitted to probate, and letters testamentary thereon granted, against the objection of, and counter application for, letters of administration by the surviving husband; and the latter has appealed.

*Mr. Clarence A. Brandenburg* for the appellant:

1. The single question presented by this appeal is: Does marriage of a woman revoke her will previously made?

Since the decision of *Forse and Hembling's Case* in 1589, 4 Coke's Reports, 61, to the present time, it has been the law of England that the marriage of a woman revokes her will previously made. 1 Jarman on Wills, Ch. 7, 114, 120. The English rule that marriage alone revokes the will of a woman made prior to her marriage, is the law in those portions of the United States where the common law has been adopted, except where modified by statute. 1 Redfield on Wills, Ch. 7; Schouler on Wills, Sec. 424; Beach on Wills, Sec. 64. The only statute bearing upon the revocation of wills is the Maryland Act of 1798, Ch. 101, Subch. 1, Sec. 4, which is a re-enactment of the corresponding provision of the Statute of Frauds. This statute has been held to have no application to revocations by implication of law. *Baldwin* v. *Sprigg*, 65 Md. 373.

2. The only ground upon which it is contended that the marriage of a woman does not revoke a will previously made, is, that the reason of the rule being that marriage deprives her of further power of testamentary disposition and destroys the ambulatory character of a will, and that since the enactment by Congress of the laws permitting married women to make wills, the reason of the rule ceasing, the rule itself is no longer operative; that is to say, the

Married Woman's Act repeals by implication the common law rule founded upon testamentary disability. By the act of 1801, the laws of Maryland as then existing, until modified or repealed by Congress, were continued in force in the District of Columbia. The common law was part of the law so adopted. *Morsell* v. *Bank*, 91 U. S. 359; *Van Ness* v. *Hyatt*, 13 Pet. 298; *Kendall* v. *United States*, 12 Pet. 622; *United States* v. *Simms*, 1 Cranch, 258. The provision of the common law that marriage alone would revoke a will of a woman previously made, is. to be treated in the District of Columbia as if it were an express statutory enactment.

This being so, the Act of Congress conferring testamentary power upon a married woman is a general statute, intended and limited to conferring power and rights upon the woman. It makes no mention whatever of the subject of revocation, and was not intended to impair or destroy the rights of a husband except so far as expressly declared. The Married Woman's Act confers power to make a will after marriage. By the rule of law now asserted, a will previously made is revoked by the marriage. To sustain the position of the appellees, this general act, with limited purposes and objects, must be held to have destroyed by implication the previous express enactment of Congress, as we have shown, that marriage alone should operate to revoke the will of a woman previously made.

3. Repeals of statutes by implication are not favored and are never admitted where the former can stand with the new act, but only where there is positive repugnancy between the statutes, or the latter is plainly intended as a substitute for the former. *Chew Heong* v. *United States*, 112 U. S. 536. This same principle with reference to repeal by implication applies to the common law as well as to statutes. *Hooper* v. *Mayor*, 12 Md. 475. A statute made in the affirmative without any negative expressed or implied, does not take away the common law. *Day* v. *Allender*, 22 Md. 528;

Dwarris on Stat. 637. The construction contended for by the appellees is certainly in marked derogation of the common law, and should therefore be strictly construed.

4. The maintenance of a rule of law by the courts does not by any means necessitate that they should also adhere to the reasoning relied upon in the decision by which that rule was first established. Lord Mansfield in *Brady* v. *Cubitt*, 1 Douglas, 31 (decided in 1778), rested the rule that marriage and birth of issue operated to revoke the will of a man made previous to marriage, on the presumption that the testator intended to revoke his will; and sixty years later, in the case of *Marston* v. *Roe dem Fox*, decided in 1838, fourteen out of fifteen judges (8 Adol. & Ellis, 14), held that the doctrine of implied revocation rests upon the ground of a tacit condition annexed to the will when made that it should not take effect if there should be a total change in the situation of the testator's family. The Court of Appeals of Maryland, in *Baldwin* v. *Sprigg*, 65 Md. 381, concurred in this view.

In *Roane* v. *Hollingshead*, 76 Md. 369, the court had under consideration the same question presented by this appeal, and arrived at the conclusion that the reason of the rule is that marriage destroyed the ambulatory character of the will, and inasmuch as a married woman can now make or revoke a will, the reason of the rule no longer exists, and the law itself is therefore repealed by implication.

The true reason of the rule would seem, however, to be a desire, first, to protect the husband in his marital rights in the estate of his wife, and secondly, and exactly as in the case of a husband, because marriage worked such an entire change in her condition and relations that a will made prior to marriage should not be permitted to stand. 1 Redfield on Wills, par. 294; Schouler on Wills, Sec. 424; 1 Williams on Exrs. 236. The reason for the rule given by these authorities is more consonant with reason. It originated contemporaneously with the rule relating to marriage

14 Ct. App.—30

and birth of issue in the case of a man's will, and it is reasonable to presume that the reason was the same.

5. If we consider the true rule to be that, as in the case of a husband, there is an implied or tacit condition annexed to the will, when made, that it should not be operative if there should be a total change in the condition of the testatrix, we encounter no embarrassment. For, if revoked by marriage, it is still in the power of the woman, after marriage, and when that act must necessarily be considered, to re-execute her will.

If it should be asked why marriage of a man without birth of issue does not revoke the will made prior to marriage, the answer is plain. The law has made what it deems an adequate provision for the wife by giving her the right of dower in real estate and a share in his personal estate absolutely, of which she can not be deprived without her consent by the will of her husband. There is therefore no necessity for a revocation of the ante-nuptial will of the husband in order to secure her rights. In the case of a woman, her entire estate is subject to her testamentary control, and she ought not to be considered or presumed to have intended to defeat such rights of the husband as may yet remain, by anything short of a will deliberately executed after the rights of the husband have arisen.

*Mr. J. A. Maedel* for the appellee:

The marriage of the testatrix did not revoke her will previously made. The common law rule in that regard has been changed by force of the provisions of the Married Women's Act of April 10, 1869. See *Emory* v. *Appellant*, 81 Me. 575; *Noyes* v. *Southworth*, 55 Mich. 173; *Fellows* v. *Allen*, 60 N. H. 439; *Roane* v. *Hollingshead*, 76 Md. 369; *In re Wills of Lyon*, 96 Wis. 339; *Will of Ward*, 70 Wis. 251; *Will of Fuller*, 79 Ill. 99; *Webb* v. *Jones*, 36 N. J. Eq. 163.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

The only question presented on this appeal is, whether the marriage of the testatrix after the making of her will did or did not revoke the will? This depends entirely upon the effect and operation of the statute law in force in this District, in respect to the power and capacity of a *feme covert* to make a valid last will and testament of her property, without the consent of her husband.

Section 728 of the Revised Statutes relating to this District is as follows:

"Any married woman may convey, devise and bequeath her property, or any interest therein, in the same manner, and with like effect, as if she were unmarried."

This section is part of the Act of Congress of the 10th of April, 1869, and is still in force, unrepealed or affected by the Act of Congress of June 1, 1896, entitled "An act to amend the laws of the District of Columbia, as to married women," etc.

This provision of the statute invests the married woman with the same full and unqualified testamentary capacity as that possessed by an unmarried woman or a man; and there is no more reason for holding that a subsequent marriage *alone* will operate a revocation of the will of a woman than there is for holding that subsequent marriage *alone* will operate a revocation of the will of a man. There is in fact and legal effect no distinction between the two cases. They both stand upon the same principle and are controlled by the same reason.

Before the passage of the statute just quoted, and while the common law principle prevailed, the marriage of a woman in this District absolutely revoked her will, and that, too, though her testamentary capacity was subsequently restored by the event of her surviving her husband. *Forse and Hembling's Case,* 4 Rep. 61; *Cotter* v. *Layer,* 2 P. Wms. 624; *Doe* v. *Staple,* 2 T. R. 695. So that, after

her marriage, a woman could neither make a will nor revoke a will previously made; and hence, by operation of law, a will previously made by her was revoked. Having made a will before marriage, if the marriage did not operate a revocation, the will would lose its ambulatory character, and become a permanent and determinate dispotion of the property. This would at once destroy the very essence and distinguishing nature of a will. It is true, as contended by the appellant, that the principle of the common law, whereby the marriage of a woman revoked absolutely her previously made will, has for centuries been a settled rule of property; and therefore could only be changed by some decisive legislative provision. But that ancient principle of the common law has been radically changed by modern legislation; and the legislation of Congress for this District, upon this subject, has been as radical as that of any of the States of the Union. And while it is true that the statute is not explicit in declaring that the marriage of a woman shall not operate a revocation of a previously made will, yet a rational construction of the statute leads necessarily to that result. By the terms of the statute, a married woman may make and revoke her will at pleasure; and if the will be made before marriage, why should the law, by its mere operation, because of the subsequent marriage, revoke the will, and thus make it necessary for re-execution or republication the next hour, it may be, after the marriage? The reason, according to the common law principle, for making the marriage operate a revocation is, as stated by the Court of King's Bench, in *Doe* v. *Staple*, 2 T. Rep. 695, 697, that the marriage must have the effect of revocation "because a will supposes a disposing power at the time in the person making it, and that it shall be always afterwards subject to his control; but that is not the case with a woman after coverture; for when she enters into that engagement she gives up the right to her property." It is, as was said by Lord Chief Justice Kenyon,

"that the will of a woman made before coverture ceases to be her will afterwards; because it is of the essence of a will that it should be valid during the remainder of the devisor's life. Therefore, the will of a *feme sole* ceases to have any operation after she becomes *covert.*"

The reason, therefore, at the common law, for the revocation of the will of a *feme sole* by subsequent marriage, is, that, by such engagement, she lost the control and disposing power of her property; and consequently the will could not have a continuous operation and vitality during her life. But it is the prime object and purpose of the statute to change the law in this respect, and to invest the married woman with complete control and disposing power over her property; and the disposing power that she may possess at the time of her marriage she continues to possess as if she were unmarried, until she may think proper to exercise her disposing power. It would be quite inconsistent with this statutory power of disposition that the previous will should be revoked, upon the principle of the common law, that, by the marriage, she ceased to have disposing power and control of her property. There would certainly be no reason or sense in attempting to preserve and apply the mere result of an old common law principle, when that common law principle, with the reason upon which it was founded, has been abrogated and annulled, and an entirely new principle and policy substituted. We are clearly of opinion that the subsequent marriage of the testatrix did not revoke her previous will.

This question has been the subject of judicial determination in several of the appellate State courts of the country, upon statutes not broader or more comprehensive than the section of the Revised Statutes to which we have referred; and those courts have held, as we hold in this case, that the subsequent marriage of the woman did not revoke her previous will. And without stating the facts of those cases, or quoting from the decisions, we deem it sufficient to refer to

the cases as reported.   *Fellows* v. *Allen*, 60 N. H. 439; *Noyes* v. *Southworth*, 55 Mich. 173; *Roane* v. *Hollingshead*, 76 Md. 369; *Emory* v. *Appellant*, 81 Me. 575; *In re Wills of Lyon*, 96 Wis. 339, 340, 341; *Will of Esther R. Fuller*, 79 Ill. 99–102.

It follows from what we have said, that the order appealed from must be affirmed; and it is so ordered.

*Order affirmed.*