[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 174 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 175 
 OPINION
This is an appeal from an order of the district court admitting the will of Caroline Roebling Walters, deceased, to probate. *Page 176 
The testatrix, while the wife of one Hagner, on January 27, 1938, at Washington, D.C., made a will providing for the said Hagner and their two minor daughters. On February 27, 1939, she made a codicil to said will revoking the bequest to her husband, Hagner. On May 8, 1939, the testatrix, then a resident of Washoe County, Nevada, obtained a decree of divorce from Hagner. On said May 8, 1939, she married the contestant, Paul A. Walters, also a resident of Washoe County, Nevada.
The testatrix died through accident in Washoe County, Nevada, on July 8, 1939, without having made another will. She left surviving her husband, Walters, and two daughters the issue of her marriage to Hagner, aged eight and two, residing with their father, Hagner, at Washington, D.C. All the estate consists of separate property owned by the testatrix prior to her marriage to Walters.
The question of law presented on this appeal is whether the marriage of said testatrix to Walters and her death revoked her prior will made while she was married to Hagner and in which appellant was not mentioned.
Appellant contends that the said will and codicil were revoked by the marriage of the testatrix to Walters: First, under the terms and provisions of section 2 of the wills act (sec. 9906 N.C.L.; second, under the terms and provisions of section 8 (sec. 9912 N.C.L.); third, under the doctrine that the masculine terms in the statute must be construed to include the feminine; fourth, under what appellant claims to be a constitutional construction of the statute as differentiated from what he claims was an unconstitutional construction placed upon it by the trial court; fifth, under the common law as adopted in Nevada, if there is no statutory provision applicable.
We will dispose of the contentions in the order named.
First. Was the will revoked under the terms of section 9906 N.C.L., which reads as follows: "Any *Page 177 
married woman may dispose of all her separate estate by will, absolutely, without the consent of her husband, either express or implied, and may alter or revoke the same in like manner as a person under no disability may do. Her will must be attested, witnessed, and approved in like manner as all other wills."
1. Under the common law a married woman could not make a will. In 1862 there was enacted in this state a statute, under section 2 of which a married woman could make, alter or revoke a will in like manner as a person under no disability might do, subject, however, to the limitation that the making, altering or revocation must be with the formal written consent of the husband. In 1873 said section 2 was amended to read as above set forth. It will be noted that the limitation as to the written consent of the husband was removed; the mention of common property was dropped, and the word "might" changed to "may." Appellant presents the view that the removal by the legislature of the limitation as to the making, altering or revocation subject to the consent of the husband, by the 1873 amendment, placed married women in the same position as married men in making, altering or revoking wills relating to separate property, and placed wills of married women, as to revocation, in the same position as those of men and unmarried women possessing the qualifications prescribed by section 1 of the act (sec. 9905 N.C.L.). In other words, appellant construes the words "in like manner as a person under no disability may do" as evidencing the manner in which a will of a person under no disability is to be deemed revoked by implication of law, as well as the way a person may revoke it by a subsequent testamentary instrument or by the other affirmative methods prescribed by statute.
2. We are unable to agree with that construction. The legislature dealt with methods of revocation, express and implied in other sections of the wills act (sections 9912 to 9917 N.C.L., both inclusive). Section 2 of the *Page 178 
1862 act and section 9906 N.C.L., which amended it, do not appear to us as being statutes relating to methods of revocation, but are, as is urged by respondent in the following language, which we adopt, "statutes empowering married women to make wills and conferring upon them the ancillary rights of alteration or revocation. The words `may alter or revoke' are clearly enabling and permissive — not destructive or restrictive. The intention which appellant deduces from these words would have been expressed by the words `shall be deemed revoked' which were used in the other portions of the act where the legislature was providing for revocation by operation of law. It is not reasonable to suppose that had the legislature intended to provide for such revocation when it enacted section 9906 it would have used terms from which that intention could be deduced only by highly doubtful construction, when all other sections of the Act dealing with revocation are clear and unambiguous."
3. The terms "deemed revoked" or "revoked by implication (or operation) of law" mean something different from the term "revoked."
"Revocation is an act done by the party, by which he recalls his will. The statute, therefore, with propriety says, not that marriage revokes, but that it is to be deemed, or considered the same as, a revocation. It is not a revocation, but it has the effect of a revocation." Lathrop v. Dunlop, 4 Hun, N Y, 213.
"To revoke is to recall, cancel, or set aside, and a revocation can only be by the grantor, licensor, or maker of an instrument granting a right or privilege. * * * The statute declares that a subsequent marriage shall be deemed a revocation of a will, which means that the act of the testator in entering into the new relation shall be considered and regarded as a recalling, canceling, or setting aside of his will." Ford v. Greenawalt, 292 Ill. 121, 126 N.E. 555, 557.
4-6. An examination of the statutes on wills discloses that the legislature used those terms in the sense, *Page 179 
"revoked" when referring to intentional revocation, and "revocation implied by law" when referring to constructive revocation. See sections 9912, 9913, 9914, 9915, 9916 and 9917 N.C.L. Had the legislature intended to provide for revocation by implication in section 9906, it would not have used the words "may alter or revoke," but would have used the term "deemed revoked," as it did in other sections of the act. See In re Estate of Lewis, 39 Nev. 445, at page 455, 159 P. 961, 4 A.L.R. 241. The use of the words "may * * * revoke * * * in like manner as a person under no disability might do" in the 1862 act referred only to intentional revocation by the act of the maker; and when the words were used in the 1873 amendment they carried the same meaning.
"Where an amendment leaves certain portions of the original act unchanged, such portions are continued in force, with the same meaning and effect they had before the amendment. So where an amendatory act provides that an existing statute shall be amended to read as recited in the amendatory act, such portions of the existing law as are retained, either literally or substantially, are regarded as a continuation of the existing law, and not as a new enactment." 59 C.J. 1097.
7. The construction contended for by appellant would apply to a will executed by a married woman the same statutory rules of implied revocation as apply to wills executed by men and by unmarried women. To effect the revocation of a man's will by implication three things are necessary: Marriage, failure to mention his wife in the will, and her survival of him. Marriage alone is deemed the revocation of an unmarried woman's will. Circumstances necessary to imply the revocation of a will executed by a "person under no disability" are entirely different in the case of a man than in that of an unmarried woman, and we cannot ascribe to the legislature an intent to leave the question of the will of a married woman in an uncertain state, when it was definite as to others. Section 9906 was intended to remove the testamentary disability of married women, and in *Page 180 
that section the legislature was not dealing with methods of revocations by operation of law.
8. The will was not revoked under the terms of section 9906 N.C.L.
The second proposition advanced by appellant is that the will was revoked under the provisions of section 9912 N.C.L., which reads as follows: "No will in writing shall be revoked unless by burning, tearing, canceling, or obliterating the same, with the intention of revoking it, by the testator, or by some person in his presence, or by his direction, or by some other will or codicil in writing, executed as prescribed by this act; but nothing contained in this section shall prevent the revocation implied by law from subsequent changes in the condition or circumstances of the testator."
Appellant's contention is summed up by him in the following language: "If the husband or wife share substantially in the estate through dower or curtesy or a substitute therefor, regardless of a will made prior to marriage, then there has been no such change in conditions or circumstances as to require revocation of the will; but if, on the other hand, there is no statutory provision for dower or curtesy or a substitute therefor to be taken regardless of the will, and the sustaining of such will results in the surviving spouse being precluded from the estate and in sharing substantially therein, then there is such a change in conditions and circumstances as to revoke the will by implication."
9, 10. In considering the provisions of section 9912 N.C.L., we must keep in mind that revocations by implication are not favored. In re Adler's Estate, 52 Wn. 539, 100 P. 1019, 1023. And, also, that a proviso such as is found in section 9912 should be strictly construed. 59 C.J. 1089.
11-13. Our consideration of the cases cited results in the conclusion that the revocation implied by law referred to in said section 9912 refers to the implication in force and effect at common law. Under the common law marriage revoked a woman's will. The reasons *Page 181 
given for such revocation were that inasmuch as a will by its nature is ambulatory and under the control and direction of the maker during his or her lifetime, and the marriage of a woman placed the disposition and control of her property in the husband, by thus surrendering the disposition and control of the property the ambulatory characteristics of her will made before marriage were destroyed, the control thereof taken from her, and it was thereby revoked. However, there was one exception to this rule, to wit: That by antenuptial agreement the provisions of the will could be given life and effectiveness and continued in force and effect after marriage. Later, by statutory enactment in some of the states, a married woman was given full power to hold her separate property and dispose of the same by will or otherwise. Such power was given in this state by the provisions of section 9906 N.C.L. The effect of the enactment of a statute granting such power to a married woman was to render the common-law rule of revocation of a woman's will by marriage ineffective, because the reason for the rule no longer existed. This principle is sustained by the following cases: Kelly v. Stevenson, 85 Minn. 247,88 N.W. 739, 56 L.R.A. 754, 89 Am. St. Rep. 545; Hastings v. Day, 151 Iowa 39, 130 N.W. 134, 34 L.R.A. (N.S.), 1021, Ann. Cas. 1913A, 214; In re Ward's Will, 70 Wis. 251, 35 N.W. 731, 5 Am. St. Rep. 174; In re Lyon's Will, 96 Wis. 339, 71 N.W. 362, 363, 65 Am. St. Rep. 52; Fellows v. Allen, 60 N.H. 439, 49 Am. Rep. 328; Noyes v. Southworth, 55 Mich. 173, 20 N.W. 891, 54 Am. Rep. 359; In re Hunt's Will, 81 Me. 275, 17 A. 68; Webb v. Jones,36 N.J. Eq. 163; Morton v. Onion, 45 Vt. 145; Roane v. Hollingshead,76 Md. 369, 25 A. 307, 17 L.R.A. 592, 35 Am. St. Rep. 438; Chapman v. Dismer, 14 App. D.C. 446, 453.
14, 15. Therefore, if the revocations implied by law referred to in section 9912 N.C.L. were the revocations known to the common law, then insofar as a woman's will is concerned, by reason of the rule having ceased to exist, that proviso has no application. If section 9906 *Page 182 
is to be given any force or effect insofar as the present case is concerned, it would only be by the application of the rule at common law relating to the revocation of a man's will. We have been impressed, after a consideration of the many cases cited and read, with the fact that much of the confusion which seems to exist in the cases results from a desire to reach a conclusion which would square with what appealed to the courts as conforming to the justice of the particular cases under consideration, and being confronted with the fact that no such a thing as a married woman's will was known to the common law; that the rule that the marriage of a single woman revoked her will no longer existed because the reason for the rule had ceased; and having no express statutory provision, resort was had to the common-law rule relative to a man's will. In some cases this rule relative to the revocation of a man's will was extended to apply to a woman's will. We also find the question of curtesy and dower given controlling effect. It is our opinion that where curtesy and dower were provided for under the statute and a will was made which took no account of these vested rights, then the will would be deemed revoked to the extent that it attempted to convey such rights in contravention of the statute. That would be a perfectly logical holding. But we can see no foundation for the extension of the rule, which is found in some of the cases and which appellant has asserted as an established proposition of law, that in states where dower and curtesy are not provided for and a will does not make provision for the surviving spouse, then such will is revoked in its entirety. Again we find cases holding, in a few of the states where husband and wife are made heir to each other, that marriage revokes a prior will. These cases endeavor to sustain the principle adopted by an application of the common-law rules which revoked a man's will. They are not persuasive, because we are dealing with a married woman's will, and more particularly because of *Page 183 
the view we take of the controlling effect of our statute. Many of the cases which have been cited are of little value in assisting us in the determination of the question presented here, because of the wide divergence of the statutory background. We are impressed with the fact that the legislature of Nevada has expressly provided when marriage shall act as a revocation of a will — a man's will under section 9914, a woman's will under section 9915. No matter what consideration may be given to the diversity of applications made of the common-law rules, or the devious paths taken to reach desired results in particular cases, we must rest our decision on the statutory law of this state. We think that the statutes are plain and direct, with a clear and definite meaning, such meaning being that a man's will is revoked by marriage under the terms of section 9914; that an unmarried woman's will is revoked under the terms of section 9915; and that no provision exists in the State of Nevada for the revocation by marriage of a will made by a woman while married.
16, 17. We have given careful attention to the contention of appellant that a will made by a woman while married could be revoked under the terms of section 9914, on the ground that the masculine terms should be held to include the feminine, and have read the cases cited in support of that proposition. To our minds they are not applicable as authority here, because of the fact that with them no such situation existed as does with us, where one section deals specifically with the masculine and is followed by a section dealing with the feminine. There is no more justification for saying that a will executed by a woman while married would fall within the provisions of section 9914 than to say it would fall within the provisions of section 9915.
"Where the language of a statute is plain and unambiguous, and its meaning clear and unmistakable, there is no room for construction, and the courts are not permitted to search for its meaning beyond the statute *Page 184 
itself." State v. Jepsen, 46 Nev. 193, at page 196, 209 P. 501, at page 502; State v. Beemer, 51 Nev. 192, at page 199,272 P. 656; Ex Parte Smith, 33 Nev. 466, 480, 111 P. 930.
18. The mention of an unmarried woman's will in section 9915 excludes that of a married woman; such is the plain implication. The rule of expressio unius est exclusio alterius is applicable. And to us it is equally plain that in adopting section 9914 the legislature was considering men's wills, and not those of women.
To sum up, we cannot but conclude that the legislature in enacting section 9914 had in mind only a man's will; that in enacting section 9915 it had in mind only a woman's will; and that "if the legislature had intended the marriage of a woman who, while married, had made a will, to operate to revoke it, it would have said so." Hibberd v. Trask, 160 Ind. 498, 67 N.E. 179,180.
19, 20. We feel that the statute on wills is constitutional, even though we hold that a will executed by an unmarried woman is deemed revoked by her subsequent marriage, but that a will executed by a married woman is not to be deemed so revoked. This distinction is not unreasonable and arbitrary, and its operation is uniform as to members of the class to which it is made applicable.
"But if the classification is not wholly unreasonable and arbitrary, so that the statute is uniform in its operation on all members of the class to which it is made applicable, no one is denied the equal protection of the laws guaranteed by the federal constitution [Amend. 14.]" 6 R.C.L., sec. 372, p. 378.
For many years the legislatures of the different states have differentiated between married and unmarried women regarding their right to make wills. That power in Nevada has existed at all times as to unmarried women, but was not given to married women until 1873.
"The power to make wills is neither a natural nor a constitutional right; it depends upon the statute, and may be conferred, regulated, limited or taken away in whole or in part by legislative enactment." Alexander *Page 185 
on Wills, sec. 21. See, also, Schouler on Wills (6th Ed.), sec. 15; Page on Wills (2d Ed.), sec. 22.
21. Appellant asserts that where the power to execute wills is conferred by statute upon certain classes, and subsequent to their enactment the same power is conferred upon other persons of the same class, then the wills of the persons to whom the power is subsequently given are revoked in the same manner as those of the persons previously holding the right to execute wills. The foremost case cited in support of this contention is In re Booth's Will, 40 Or. 154, 66 P. 710. This case holds that where a statute existed providing for the revocation of an unmarried woman's will, such as section 9915 N.C.L., and subsequent to the enactment of such a statute married women were given the right to execute wills, the statute emancipating married women did not repeal the prior enactment relative to unmarried women. We think it can further logically be said that while the emancipatory statute relative to married women did not repeal the statute relative to the revocation of unmarried women's wills, it just as certainly did not amend that statute so as to include within its provisions the revocation of a married woman's will. We cannot subscribe to the idea that the statutes providing for revocation of a man's will and for the revocation of an unmarried woman's will, upon the subsequent enactment of a statute giving to married women the right to execute a will, were expanded so as to include married women within their intent and purposes. We do not agree that married women are in the same class.
Appellant is not without substantial authority supporting the contentions he here makes. We have followed what we deem to be the weight of authority and which we believe more logically squares with our statutory background.
22. If the statutes of Nevada were silent on the matter of revocation of wills by marriage, we could find more justification for a holding that marriage revokes *Page 186 
all prior wills, which Schouler on Wills (6th Ed.), vol. 1, p. 732 (cited by appellant), under such circumstances, deems to be the better rule. But with us the conclusion is inescapable that there is a plain statutory mandate in this state as to when marriage shall revoke a will, and a plain and clear resulting implication as to when it shall not. We accept the statute as it is written. Whether or not it is just or equitable is for the legislature.
In a summary of his brief counsel for the minor heirs has classified the cases sustaining the conclusion we have reached in this case, and we believe it may be of assistance to repeat the classification in this opinion.
The exact question has been adjudicated in eight decisions that we have considered. In Van Guelpen's Estate, 87 Wn. 146,151 P. 245, Ann. Cas. 1917C, 1037, the will of a married woman was held revoked. In the following seven cases, with facts identical to those in the instant case, wills executed by married women were upheld: Burton's Will, 4 Misc. 512, 25 N.Y.S. 824; Chapman v. Dismer, 14 App. D.C. 446; Comassi's Estate, 107 Cal. 1,40 P. 15, 28 L.R.A. 414; Hibberd v. Trask, 160 Ind. 498,67 N.E. 179; Lufkin's Estate, 32 Haw. 826; McLarney's Estate,153 N.Y. 416, 47 N.E. 817, 60 Am. St. Rep. 664; Ward's Will,70 Wis. 251, 35 N.W. 731, 5 Am. St. Rep. 174.
Cases rendered in jurisdictions having a section comparable to section 9912 N.C.L. and which support our conclusion, are: Kelly v. Stevenson, 85 Minn. 247, 88 N.W. 739, 56 L.R.A. 754, 89 Am. St. Rep. 545; Re Ward's Will, 70 Wis. 251, 35 N.W. 731, 5 Am. St. Rep. 174; Re Lyon's Will, 96 Wis. 339, 71 N.W. 363, 65 Am. St. Rep. 52; Fellows v. Allen, 60 N.H. 439, 49 Am. Rep. 328; Re Hunt's Will, 81 Me. 275, 17 A. 68; Morton v. Onion, 45 Vt. 145; Noyes v. Southworth, 55 Mich. 173, 20 N.W. 891, 54 Am. Rep. 350; Re Lufkin's Estate, 32 Haw. 826.
Cases rendered in jurisdictions having a section comparable to section 9915 N.C.L. and which support our *Page 187 
conclusion, are: Burton's Will, 4 Misc. 512, 25 N.Y.S. 824; Comassi's Estate, 107 Cal. 1, 40 P. 15, 28 L.R.A. 414; Hibberd v. Trask, 160 Ind. 498, 67 N.E. 179; Lufkin's Estate, 32 Haw. 826; McLarney's Estate, 153 N.Y. 416, 47 N.E. 817, 60 Am. St. Rep. 664.
At the time of the decision in Comassi's Estate, supra, California had sections similar to sections 9914 and 9915, N.C.L., and that case sustains our conclusion.
Lufkin's Estate, 32 Haw. 826, is the most nearly in point of all cases cited, and it sustains our conclusion.
The order of the trial court admitting the will to probate is affirmed.