# Gay *v.* Gay.

### *Contested Probate of Will.*

1. *Revocation of will by marriage and birth of child.*—The implied revocation of a will by subsequent marriage and birth of issue, under the statute of Alabama (Code of 1886, § 1953), is based on a presumed alteration of intention, arising from changed circumstances, new relations and duties; and the presumption is made conclusive, unless provision is made for the after-born child, or an intention not to make provision is shown in the will; but the presumption may be rebutted by a settlement providing for the child, made after as well as before the execution of the will.

2. *Same; provision for child by ante-nuptial contract.*—When provision for the after-born child is made by gift or settlement, the nature and extent thereof are left to the discretion of the testator as when made by will, except that it must not be so grossly inadequate as to be the equivalent of no provision; and an ante-nuptial contract, by which, in consideration of the marriage and the relinquishment by the wife of all interest in the estate of the husband and testator, real and personal property is conveyed to her, in trust to hold the same during life or widowhood, with remainder to the issue of the marriage living at his death, or at the time of her second marriage, and, on the death of such issue unmarried, then to the heirs at law of the testator, is *prima facie* a substantial provision for the after-born child, and rebuts the presumption of revocation.

APPEAL from Montgomery Probate Court.

Heard before the Hon. F. C. RANDOLPH.

This was a contest of the probate of a paper purporting to be the last will and testament of Julius B. Gay, deceased, by Julius B. Gay, an infant child, represented by guardian *ad litem*. The grounds of contest, and the facts of the case, appear in the opinion. The contest was sustained, and it was adjudged and decreed by the probate court that the will was revoked and void. From that decree the proponents appealed.

[Gay v. Gay.]

GRAVES & BLAKEY, and THOS H. WATTS, for appellants.
1. The testator made a will and afterwards married, and had
a child issue of the marriage. At the time of the marriage
he made a contract with his wife, which provides for her and
any child he might have by her. And the sole question is,
whether the will was revoked. The will and the marriage
contract are both set out in the bill of exceptions taken to the
decision of the Probate Judge, who decided that the will was
revoked by the marriage and the birth of a child. 2. The
questions presented are first, what was the common law, on
such a state of facts, and second, what is the law under the
statutes of Alabama? First, as to the common law, mar-
riage and the birth of issue are commonly regarded as hav-
ing the effect to revoke a will made before marriage.
1 Jarman, 272; see 1 Redfield on Wills, 294, § 2. But even
in England, independent of statute, the marriage and birth
of a child will not operate as a revocation of the will, when
the father before making the will or contemporaneously with
it, makes express provision, by a *separate* deed or instru-
ment, for such issue.—See 1 Redfield, 295, § 5, and note 11;
1 Jarman on Wills, 272, and note. And when the provis-
ion for the issue is made, after the will, it is proper it should
be considered in giving a construction to the will, since the
will, for most purposes, is regarded as speaking from the
death of the testator.—1. Redfield, note 11, to p. 295; Earl
of Ilchester, 7 Ves. 348; see, also, 1 Redfield, 298, § 12;
*Brush v. Wilkins*, 4 Johns. Ch. 506; *Warner v. Beach*,
4 Gray, 162. 3. But our statute regulates the matter, and
by it we must be guided. Our statute (see Code of 1886,
§ 1953), declares, "If after making any will disposing of his
whole estate, the testator marry and have issue of such mar-
riage, born either in his life-time or after his death, and the
wife or such issue is living at his death, such will must be
deemed revoked, unless *provision has been made for such
issue by some gift or settlement*," &c. In considering this
matter we must not overlook the effect of section 1955 of
the Code of 1886.—1 Redfield, 299, § 15. The New York
statute on this subject is almost in the identical language of
the Alabama statute. In *Havens v. Vandenburgh*, 1 Denio,
27, it was held under the New York statute, that marriage
and birth of issue operated as a revocation, unless provision
was made either *in or outside of the will*, for such new rela-
tions.—See, also, 4 Kent Com. 527. Indiana has substan-
tially the same statutory provisions as Alabama, except that

[Gay v. Gay.]

the provision for the child must be made by will.—*Hughes
v. Hughes*, 37 Ind. 185. The Pennsylvania statute is like
the Alabama statute, except that the provision for the child
to prevent the revocation must be in the will.—*Walker v.
Hall*, 34 Penn. St. 483. It is only revoked *pro tanto*. It is
not necessary that the child shall be named, *eo nomine*. It
is sufficient if *provision* is made for it.—*Block v. Block*,
3 Mo. 594. If the wife under the settlement have power to
provide for the child—or the property is given to her, in
trust that she shall provide for the child, this is a suffi-
cient provision for the child.—*Beck v. Mitz*, 25 Mo. 70.
4. Now our statute declares that the will is not revoked by
the subsequent marriage of testator, and the birth of issue
if provision is made for such issue by *some* gift or *settlement.*
It is not necessary then that provision should have been
made in the will itself. It is sufficient if by *some gift or
settlement* provision is made for the issue. The marriage
*settlement* makes *provision* for the *issue of the marriage.*
This is such *provision* for the *issue* as *prevents* the *mar-
riage* and *birth of a child* from *revoking* the will. The will
is only revoked *pro tanto*. The *will and* the *marriage* set-
tlement constitute together the last will and testament of the
testator, and both must be treated together. The will then
is not revoked as to the subsequent child, By the express
language of the statute, the will is not revoked. 5. So far
as the widow is concerned the law makes ample provision for
her. She can always protect herself by *dissenting* from the
will of her husband. But the marriage contract provides
for her, and for any child born of the marriage. But § 1955
of the Code of 1886 provides for the child. The child was
born after the making of the will, and comes under the pro-
tection of this section. So that no hardship can result to the
child or the wife by establishing the will. 6. But the fact
must not be overlooked that the will does not *purport* to
dispose of all the property of the testator. In order to make
the marriage and issue thereof operate as a revocation of the
will, is it not necessary that the *will* itself shall show a dis-
position of the testator's "*whole* estate?" The *presumption*
that a testator, when he makes a will, intends to dispose of
his whole estate, and does not intend to die intestate as to
any of it, can not, we respectfully submit, apply to the lan-
guage of section 1953. There it is expressly stated, that,
"if after making any will disposing of his whole estate," &c.
There is no room left for *presumption*. Section 1968 of

[Gay v. Gay.]

the Code of 1886, and the interpretation given to it by numerous decisions, must not be overlooked: "Except in the cases provided for in the preceding article, a will in writing can only be revoked by burning," &c. Then we submit, that unless it appear from the will itself that the will disposes of the *whole* estate of the testator, the marriage and birth of issue do not revoke the will.

SHAVER & HUTCHESON, *contra*.—1. A will is deemed revoked by subsequent marriage and issue on the ground that such revocation is a *tacit condition* to that effect, annexed to the will at the *date* of its *execution*. Hence a settlement providing for the issue made *after* the will does not rebut the presumption of its revocation.—1 Jarman on Wills, (Randolph & Talcott's Ed.), top page 277 and top page 288; *Israell v. Roden*, 2 Moore P. C. C. 51, *overruling* case of Earl of Ilchester, 7 Vesey, 348, and other cases; see note to page 277, 1 Jarman on Wills. 2. At common law, the revocation is not a question of intention, but a *conclusive presumption*, or *rule*, of law.—3 Jarman on Wills, 783, note 19; 1 Jarman on Wills, 277, *et seq; Brush v. Wilkins*, 4 Johnson's Chan. 510, *et seq.;* Schouler on Wills, §§ 423, 426. Hence parol evidence is not admissible to rebut presumption of revocation. Our statute is declaratory of the common law.—Code of 1886, § 1953. 3. Where the authorities say that "any provision whatever for the issue will rebut presumption of revocation," they will be found to refer to provisions in *Wills*, and not outside settlements. Settlements outside the wills must be fair, reasonable, and *in accordance with the principles and policy* of the *law in such matters.*—2 Kent's Commentaries, 170; Schouler on Wills, 425; Schouler Domestic Relations, 263. If this be true as to marriage settlements and in reference to the wife, who makes the contract, *a fortiori* is it true as to *infants*, who are incapable of protecting themselves by contract.—1 Williams on Executors, marg. p. 97. 4a. The marriage settlement in this case makes no provision for the education or support of the issue during the life of the mother (widow of testator), which may last during the entire period of infancy, when the child most needs such provision. The same legal duty resting on the father for the support of the child, does not, under the Alabama decisions, rest on the mother. *b.* It—the marriage settlement—only makes *contingent* provision for the child after the mother's death, *in the event the mother survive the husband. c.* It is in consid-

[Gay v. Gay.]

eration of marriage (in itself a valuable consideration), and also, in consideration of relinquishment of dower and all interest in personalty of the husband's estate. *d.* The husband reserves to himself the use during his life of the property conveyed, free of charge. *e.* The property settled is wholly disproportionate to the considerations given by the wife, and wholly disproportionate to the husbands estate, the *testator's* condition in life. 5. The law presumes that a man intends to be just to his offspring. The settlement is to be construed in the light of this presumption.—1 Williams on Executors, marg. p. 97. 6. The will disposes of the whole of the testator's estate. At the date of the will he owned property, exclusive of that specifically devised and bequeathed, not enough to pay legacies made in section 4 of the will. The fifty shares of Capital City Insurance stock conveyed in the settlement are specifically bequeathed in section 3 of the will. This is a revocation *pro tanto*, and tends to show (if it were a question of intention) an intention that the whole will be revoked. The settlement is introduced "to *rebut* the *presumption* of *revocation.*"—Code of 1886, § 1953. So far from this, it *tends to show a revocation.* 7. The statute, Code of 1886, § 1953, contemplates that the provision for the issue, in order to rebut the presumption of revocation, shall be made by the testator. The wife, "in the judgment of the law, is the purchaser" of the property which she acquires by ante-nuptial contract.—*English et al. v. Foxall,* 2 Peters, top page 607. Hence the provision made for the issue, in the settlement in this case, is not made by the *testator,* but by the *mother.* The mother *purchased* the provisions; she paid value for them.

CLOPTON, J.—Section 2282 of the Code of 1876 (being section 1953 of Code, 1886), provides: "If, after making of any will, disposing of his whole estate, the testator marry, and have issue of such marriage, born, either in his lifetime or after his death, and the wife or such issue is living at the death of the testator, such will must be deemed revoked, unless provision has been made for such issue by some gift or settlement; or unless such issue has been provided for in the will, or in such way mentioned therein as to show an intention not to make such provision; and no other evidence can be received for the purpose of rebutting the presumption of such revocation." Julius B. Gay, being then a widower, made his will August 3d, 1884, devising and bequeathing

his real and personal property to his six children born of a
deceased wife. In February, 1885, he married a second
time, and a few days prior to this marriage, he and his in-
tended wife made an ante-nuptial contract, the nature and
provisions of which will be considered hereafter. The
testator died December 31st, 1887, leaving his wife and one
child born of this second marriage surviving him. The
question presented is, whether on these facts, the will shall
be deemed revoked.

The case brings before the court, for the first time, the
construction and effect of the statute. It should be con-
strued in reference to the state of the law as it existed at the
time of the formation and adoption of the statute. The
established doctrine, which was borrowed by the English
courts from the civil law, was, that marriage and the birth of
a child revoked a prior will, whether of real or personal
estate, or both, where the entire estate was disposed of, and
no provision made for the wife and child by the will, or oth-
erwise. As to the theory of the doctrine and the principle
on which it rested, discrepant views were entertained, the
result being conflicting inferences and conclusions in respect
to the time the provision for the wife and child should be
made in order to prevent a revocation. The temporal courts
generally sustained the view, that the revocation was the
consequence of a rule of law, grounded on a tacit condition
annexed to the execution of the will, that an entire alteration
of the state of circumstances under which the will was
made, produced by subsequent marriage and birth of a
child, should operate a revocation. On the other hand, the
ecclesiastical courts maintained the view, that the implied
revocation was founded on the presumed intention of the
testator to revoke his will, arising from the change of the
state of circumstances under which it was made, and from
the new social and moral duties resulting therefrom. Lord
Mansfield sustained the rule upheld by the ecclesiastical
courts—a presumed alteration of intention—which, Chan-
cellor Kent, considered "the higher and firmer ground."
4 Kent (12 Ed.), 575; *Brady v. Cubit*, Doug. 31.

The present statutory provisions were first introduced
into the Code of 1852, being section 1957. It is not a legis-
lative affirmation *in toto* of the doctrine as it existed prior to,
and independent of the statute. By the statute, the wife or
the child must be living at the death of the testator, while
by the common law, the death of the child before the death

[Gay v. Gay.]

of the testator did not revive a will revoked by marriage and the birth of the child. By the English law, provision must be made for both wife and child, while the statute requires provision shall be made only for the child. In these respects the Alabama statute modifies the doctrine as established by both the temporal and ecclesiastical courts in England. It was framed and enacted in the light of the conflicting opinions held by these courts in regard to the principle on which the doctrine was grounded, and of the inconsistent and antagonistic results produced thereby. After having provided, that marriage and birth of a child must be deemed a revocation of a prior will, if the wife or child is living at the death of the testator, unless provision has been made for the issue by gift or settlement, or in the will, or such issue is mentioned therein in such a way as to show an intention not to make such provision, the statute declares: "no other evidence can be received for the purpose of *rebutting the presumption* of such revocation." The effect is to declare the particular kind and character of evidence, which shall be requisite to rebut the presumption of revocation, and to abrogate the rule sustained by some of the courts, that any evidence was admissible which showed a contrary intention. In respect to the statute of New York, of which our statute is a substantial copy, Chancellor Kent says, "this provision is a declaration of the law of New York as declared in *Brush v. Wilkins*, with the additional provision of prescribing the exact extent of the proof which is to rebut the presumption of revocation, and thereby relieving the courts from all difficulty on that embarrassing point." The law, as declared in the case referred to, was, that the presumptive revocation may be rebutted by circumstances. *Brush v. Wilkins*, 4 John. Ch. 506; 4 Kent, 12 ed. 578. By clear implication the statute declares, as the law of this State, the rule maintained by the ecclesiastical courts and approved by Lord Mansfield, which placed the doctrine of implied revocation on a presumed alteration of intention, arising from a change of circumstances, and from new relations and duties, with the modification, that the presumption of revocation shall be conclusive, unless provision is made for the after born child, or an intention not to make such provision is shown, as required by the statute.

From the doctrine that the revocation was a consequence of a tacit condition annexed to the execution of the will, it followed that a provision for the wife and child by a settle-

[Gay v. Gay.]

ment made after the will, did not prevent a revocation. 1 Jarman on Wills (Ran. & Tal. Ed.) 276. The statute having impliedly abrogated this rule, or having declared that it shall not be regarded in this State, the conclusion following from the rule falls with it, and under the statute, a settlement providing for the child, made after the execution of the will, is sufficient to rebut the presumption of revocation. We can conceive no adequate reason on which to base an inference, that the legislature intended that provision, by gift or settlement should be made *before* the child was born, and *when* a second marriage may not, and probably could not, have been reasonably contemplated.

2. The remaining question is, whether the ante-nuptial settlement is a provision for the child in the meaning of the statute? A construction should not be placed on the statute which will impair, or interfere, with the right of the testator to absolutely dispose of his property as he may deem proper, further than its terms, expressly or by clear implication, require to accomplish the intended ends. It does not operate to deprive the testator of the right and power to determine the nature and extent of the provision, which he will make for those having claims on his natural affections. It does not undertake to declare the measure and extent of the provision which the testator must make for the after born child. He may make no provision whatever, provided, the child is mentioned in the will in such a way as to show an intention not to make any provision. The requirements of the statute are satisfied, if it be shown by a provision, made by gift or settlement, or by mention of the issue in the will, that such issue was fully in his mind and contemplation, and that he acted deliberately on the matter of making provision for such issue. In *Kennebel v. Scrafton,* 2 East. 529, Lord Ellenborough said: that, the doctrine of implied revocation only applies where there is an entire disposition of the whole estate, and the wife and children are *wholly* unprovided for. Under the statute, the testator has discretion and capacity to determine the nature and extent of the provision, when made by gift or settlement, the same as when made in the will, with the qualification, that the gift or settlement will be insufficient, if by reason of gross inadequacy, it shall be an equivalent of no provision. He may make no provision whatever, but in such case, the intention must be shown by mention of the issue in the *will.* It was deemed that the issue had sufficient security resting on parental affection,

[Gay v. Gay.]

that the father's power of disposition would not be abused.

By the ante-nuptial settlement, the testator, in considera-
tion of the intended marriage and of the relinquishment by
his intended wife of all claim which she may, or might be-
come entitled to, by reason of the marriage, upon his real
and personal property conveyed to her, real and personal
property upon trust, that she should hold the same during
her natural life or widowhood, with remainder to any issue of
the marriage living at the time of the testator's death, or at
the time of her re-marriage, and should such issue die un-
married, then to the heirs at law of the testator. In *ex parte*
Earl Ilchester, 7 Ves. 348, on the marriage of the testator
subsequently to making his will, a settlement was made in
favor of his wife, by which provision was also made for the
children of the intended marriage. Lord Chancellor Eldon
held that the wife and children being provided for, and
there being children of the former marriage, the will was
not revoked by the second marriage and the birth of children.
It has also been held, that a marriage settlement, by which
an estate is secured to the wife during her life, with remain-
der to the children of the intended marriage, is a sufficient
provision for wife and children to rebut a presumptive revo-
cation. *Talbot v. Talbot,* 1 Hag. 299. A provision creating
a trust for the child, which a court of equity would enforce,
is a provision for the benefit of the child, such as falls within
the words, as well as the spirit of the statute. *Walker v.
Hall,* 34 Penn. St. 483: Clearly, provision is made by the
ante-nuptial settlement for the child, the issue of the second
marriage. The testator, at the time he made the ante-nup-
tial settlement, had fully in mind and contemplation the
probability of issue by his intended marriage, acted deliber-
ately on the matter, and determined the nature and extent of
the provision, which he would make for such issue. If the
will were revoked, the ante-nuptial settlement would remain
in force, and the child born of the second marriage would
receive the property conveyed by the settlement—the provi-
sion made by the testator—in addition to an equal distribu-
tion in his estate with the children of the first marriage. A
construction should not be placed on the statute, which
would result in such inequality and injustice, contrary to
the intentions of the testator. We regard the ante-nuptial
settlement, which *prima facie* makes a substantial provision,
a sufficient provision for the after born child, in the mean-
ing of the statute, to prevent a revocation of the will.

Reversed and remanded.

[Gay v. Gay.]

SOMERVILLE, J.—The construction of section 1953 of the present Code (Code, 1876, § 2282) does not seem to me to be involved in any doubt or embarrassment, by reason of the language in which it is expressed.

My analysis of the section is briefly this: The revocation of a testator's will, which is declared to be effected by his marriage and subsequent birth of issue, can take place only in the following concurring contingencies: (1) The making of a will disposing of substantially his *whole* estate; (2) The testator's subsequent *marriage*; (3) Birth of *issue* from such marriage at any time, whether *before* or *after* the testator's death; (4) The survival of *either* the wife, *or* such issue after the testator's death.

If these four incidents occur, the will is totally revoked, *except* in the following cases, which operate to prevent revocation: (1) Where the testator, in his will, *provides for such issue*, or makes mention therein of such issue so as to show an intention, express or implied, *not to make such provision;* (2) Unless before death he makes provision for such issue by some *gift*, or *settlement*, whether before, contemporaneous with, or *after* the making of his will.

The only mode of rebutting the presumption of revocation raised by the statute is by evidence of a provision having been made in one of the two modes last mentioned. No oral declarations of the testator are admissible in evidence for the purpose of raising a contrary intention.

Section 1955 of the Code (1886) has reference to a partial revocation of the will, so far as to allow a child born after the making of the will to take as in case of intestacy, and does not affect the question before us.

These conclusions seem to me to clearly follow from the obvious meaning of the words employed in the statute, which leave but little room for construction.

I concur in the view of Judge Clopton that the ante-nuptial settlement made, in this case, by the testator for the child afterwards born, was a sufficient provision to prevent the revocation of the will, which would otherwise have followed under the operation of the statute.