JOHN KELLY v. CLARA STEVENSON and Others.[1]

January 17, 1902.

Nos. 12,807—(162).

### Revocation of Woman's Will—Subsequent Marriage—Statute.

The will of a woman is not revoked by her subsequent marriage. The rule of the common law to the contrary has been abrogated by the statute conferring upon married women testamentary capacity.

Plaintiff, the surviving husband of Christine Erickson, deceased, appealed to the district court for Hennepin county from an order of the probate court for said county admitting to probate the antenuptial will of deceased. The case on appeal was tried before Simpson, J., who found in favor of defendants and ordered judgment affirming the order of the probate court. From an order denying a motion for a new trial, plaintiff appealed to the supreme court. Affirmed.

*B. W. Smith,* for appellant.

*F. N. Hendrix* also filed a brief in behalf of parties interested.

*Smith & Smith* and *Harold Harris,* for respondents.

*Cohen, Atwater & Shaw* also filed a brief in behalf of parties interested.

START, C. J.

On August 16, 1890, Christine Erickson, an unmarried woman, and a resident of the city of Minneapolis, this state, duly executed her last will. Thereafter, and on January 7, 1899, she intermarried with the appellant herein, and continued to reside in Minneapolis until July 29, 1900, when she died. There was no issue of the marriage. Her will was admitted to probate by the decree of the probate court of the county of Hennepin, and the appellant appealed from the decree to the district court, which affirmed it. The appellant then made a motion for a new trial, and appealed to this court from an order denying his motion.

Such, briefly stated, is the record in this case, and the sole ques-

[1] Reported in 88 N. W. 739.

tion for our consideration is whether the will of a single woman is revoked by her subsequent marriage by virtue of G. S. 1894, § 4430, which reads thus:

"No will nor any part thereof shall be revoked, unless by burning, tearing, cancelling or obliterating the same, with the intention of revoking it, by the testator, or by some person in his presence, and by his direction; or by some will, codicil or other writing, signed, attested and subscribed in the manner provided for the execution of a will. Provided that nothing contained in this section shall prevent the revocation implied by law from subsequent change in the condition or circumstances of the testator."

At common law the marriage of a woman revoked her will previously made, unless the right to dispose of her property during coverture was reserved by her by an antenuptial marriage settlement, for the reason that a married woman had no testamentary capacity, and her incapacity to make a valid will prevented her from altering by a codicil, or a new will, or in any manner, a will made before marriage. Her marriage destroyed her testamentary capacity and the ambulatory character of her antenuptial will; hence the common law necessarily implied a revocation of her will from her subsequent marriage, otherwise her pre-existing will would be an unalterable disposition of her property.

This rule of the common law was in force in this state by virtue of the statute as to the revocation of wills by implication until March 6, 1869, for the reason that prior to that date married women had no absolute testamentary capacity, but only a qualified capacity, depending on the will of the husband, as provided by R. S. 1851, c. 53, § 1, and G. S. 1866, c. 47, § 1, which, so far as here material, read as follows:

"Any married woman may devise and dispose of any real or personal property held by her, or to which she is entitled in her own right, by her last will and testament in writing, and may alter or revoke the same in like manner as if she was unmarried: provided, that no such will, alteration or revocation shall be of any validity without the consent of the husband of such married woman, in writing, annexed to such will, alteration or revocation, and attested and subscribed, and to be proven and recorded in like manner as a last will and testament is required to be witnessed, proven and recorded."

The legislature, however, by an act approved March 6, 1869, expressly repealed this proviso (see Laws 1869, c. 61, § 1), and thereby placed married women and married men upon a basis of equality as to testamentary capacity by giving to the former the same absolute testamentary capacity as if she were unmarried. The mere fact of the marriage of a man does not now, and never did at common law, revoke his will previously made. Hulett v. Carey, 66 Minn. 327, 69 N. W. 31. Why, then, should marriage revoke the antenuptial will of a woman, and not that of a man, now that she retains unimpaired by her marriage her testamentary capacity precisely as a man does? Why, in view of this equality of testamentary capacity and of legal personality of married men and women, should it be held that if a married man dies without issue, leaving a will made before his marriage, his widow shall have only so much of his estate as the law secures to her in cases where the husband dies testate, but, if the wife dies under similar circumstances, her husband shall take the whole of her estate, notwithstanding her pre-existing will?

The only answer which is or can be made to these questions is that the common-law rule that marriage revoked a woman's will previously made is still a part of the law of this state. But the reason upon which this rule was based no longer exists in this state, hence the rule itself ought to cease, in accordance with the maxim of the common law that, when the reason of any particular rule or law ceases, so does the law itself. Accordingly, it has been held in other states having statutes similar to our own, as to the testamentary capacity of married women, that the will of a feme sole is not revoked by her marriage for the reason that the rule of the common law to the contrary has been rendered inapplicable by the statute giving to her absolute testamentary capacity. In re Ward's Will, 70 Wis. 251, 35 N. W. 731, Noyes v. Southworth, 55 Mich. 173, 20 N. W. 891; Fellows v. Allen, 60 N. H. 439; In re Hunt, 81 Me. 275, 17 Atl. 68; Morton v. Onion, 45 Vt. 145; In re Tuller's Will, 79 Ill. 99; Webb v. Jones, 36 N. J. Eq. 163. See also Colcord v. Conroy, 40 Fla. 97, 23 South. 561.

In each of the states of Wisconsin, Michigan, New Hampshire, and Maine the statutory provision as to the revocation of wills by

implication is substantially the same as in our own state, and the courts of those states, in the cases we have cited, have held in opinions clear and convincing that the common-law rule as to the effect of the marriage of a woman upon her pre-existing will is rendered inapplicable by the statutes giving to married women unqualified testamentary capacity. The other cases cited also fully support this proposition. In fact, the courts in all jurisdictions where the question has arisen have so held with practical unanimity upon the ground that, the reasons for the rule of the common law having ceased to exist, the rule itself also ceased. The case of Swan v. Hammond, 138 Mass. 45, however, is a notable exception, for in that case it was held that the marriage of a woman revoked her will, notwithstanding a statute giving to married women testamentary capacity. Neither the doctrine nor the reason of that decision has been accepted by the courts whose decisions we have cited. Nor are we willing to follow it, notwithstanding our great respect for the court which gave it, for it is not in harmony with the letter or spirit of our statutes as to the equality of men and women with reference to testamentary capacity and property rights.

Upon principle and the great weight of judicial authority we must hold that the marriage of a woman in this state does not revoke her antenuptial will unless the question is foreclosed by the decision of this court in the case of Hulett v. Carey, 66 Minn. 327, 69 N. W. 31. It is here claimed by the appellant that the logic of that decision necessarily leads to the conclusion that the common-law rule as to the effect of marriage upon a woman's existing will is still in force in this state. It is true that language is used in the opinion in that case indicating that courts ought to be very conservative in holding that a rule of the common law is abrogated whenever the reason upon which it is based ceases to exist. But it was not held that a common-law rule can be abrogated or rendered inapplicable only by an express act of the legislature; on the contrary, the opinion expressly states: "We do not wish to be understood as intimating that no condition of legislation upon the subject of the rights of married women in the estates of their husbands would effect by implication a change of the

common-law rule" that the will of a man is not revoked by his subsequent marriage alone, but only by his marriage and birth of issue.

The question then before the court was whether our statute making the wife the heir of the husband in case he died leaving no issue modified this common-law rule, so that marriage alone would now revoke his will. It was urged in support of the claimed modi· fication that, inasmuch as a widow may now inherit from her hus band, therefore marriage alone effects the same change in the con dition of circumstances of the husband as was effected under the common-law rule by his marriage and the birth of issue. But the court, in view of the main reason upon which the rule was based, and of the very liberal provision made by statute for the widow independently of any act of her husband, held that the fact that the wife was the heir of the husband in certain contingencies did not so change the common-law rule that his marriage alone would revoke by implication his will. That is, the court refused to make a new rule. It is to be noted that the court did not hold that the reason for the common-law rule had ceased to exist, and, regardless of that fact, refused to give effect to the maxim, "Cessante ratione." On the contrary, the court based its decision in part upon the con-tinued existence of the reason for the rule, and held that in view of such reason and the very liberal statutory provisions securing to the widow absolute property rights in her husband's estate, she did not occupy, within the meaning of the rule, the same position as issue would; hence the rule was not modified by the statute making her a contingent heir of her husband.

Again, the Hulett case is further differentiated from this case by the fact that the abrogation in this state of the common-law rule here invoked by the appellant does not alone depend upon an appli-cation of the maxim, "Cessante ratione." The legislature, by Laws 1869, c. 61, § 1, expressly repealed the proviso to G. S. 1866, c. 47, § 1, which expressly deprived a married woman of all independent testamentary capacity. Now, it was not the marriage itself which at common law revoked a woman's will; it was not the mere fact that she had ceased to be a maid, and had become a wife; but her testamentary incapacity incident to her marriage was the destroy-

ing power which worked that result, for by the common law such result could be avoided, and her testamentary capacity preserved, by an antenuptial agreement reserving to her the power to dispose of her separate property as if sole. Bradish v. Gibbs, 3 Johns. Ch. 523. Therefore, when the legislature expressly repealed the statute which then only prevented married women from having the same testamentary capacity as they had before marriage, it by necessary implication repealed the common-law rule, and preserved to them their testamentary capacity, exactly as an antenuptial agreement would have done at common law. If the subsequent marriage of a woman does not revoke her will where her testamentary capacity is reserved to her by an antenuptial agreement, necessarily the same result follows when the statute expressly continues such capacity unimpaired by her marriage.

It also follows, for the reasons stated, that this case is not ruled by the Hulett case, except that it is conclusive against the claim of the appellant that the fact that the husband is now the contingent heir of his wife makes the marriage of a woman such a change in her condition or circumstances as to revoke her existing will by implication of law. We therefore hold that the will of a woman is not revoked by her subsequent marriage.

Order affirmed.