## C. R. DONALDSON v. BOLT HALL and Others.[1]

### January 15, 1909.

### Nos. 15,974—(167).

**Will—Revocation by Change of Circumstances.**

The common-law rule of implied revocation of wills by "changed conditions and circumstances" of the testator arising subsequent to their execution is affirmatively adopted as the law of this state by section 3665, R. L. 1905.

**Same—Settlement Preparatory to Divorce.**

A settlement of property rights between husband and wife, in anticipation of a divorce, by which the husband made over to the wife one-third of all his property, coupled with the fact of divorce, revoked by implication of law a will theretofore executed by the husband in and by which he devised and bequeathed to her the amount of property she so received on the settlement.

Petition in the probate court for McLeod county to establish a certain instrument as the will of George W. Hall, deceased. Certain heirs of deceased contested the establishment of so much of the instrument as made provision for the divorced wife of deceased. From an order allowing and admitting to probate all thereof except as contested, she appealed to the district court for McLeod county. The case was tried before Morrison, J., who found for contestants. From an order denying her motion to set aside the decision and for a new trial, she appealed. Affirmed.

*Daly & Barnard*, for appellant.

Under the common law, a man's will would be revoked by implication of law only by his marriage and the birth of issue, both happening after the execution of the will, a woman's would be so revoked by marriage alone. Baldwin v. Spriggs, 65 Md. 373; Hulett v. Carey, 66 Minn. 327.

By our statute, R. L. 1905, § 3665, copied from the Wisconsin statute, the legislature intended to reserve the two exceptions and no other. In re Ward, 70 Wis. 251.

[1] Reported in 119 N. W. 219.

The words "implied by law" have a restricted meaning. Kelly v. Stevenson, 85 Minn. 247; In re Brown's Estate (Iowa) 117 N. W. 260, 263; Charlton v. Miller, 27 Oh. St. 298; In re Jones, 211 Pa. St. 364.

*W. C. Odell* and *F. R. Allen,* for respondents.

It is not the divorce which worked the revocation but the property settlement. Lansing v. Haynes, 95 Mich. 16, cited with approval in In re Jones' Estate, 211 Pa. St. 364; Wirth v. Wirth, 149 Mich. 687.

BROWN, J.

The facts in this case, as disclosed by the findings of the trial court, are as follows: In 1893 George W. Hall, then a widower about fifty six years of age, with several children, intermarried with Matilda Hall, appellant herein, who was about thirty years of age, and thereafter they continued to live together as husband and wife until some time in October, 1906, when a separation took place. No children were born to them. Subsequent to the marriage, in April, 1904, Hall duly made and executed his last will and testament, in and by which, after directing the payment of his just debts and funeral expenses, he granted, devised, and bequeathed "unto my wife, Matilda Hall, one-third of the remainder of my property, both real and personal, which shall remain after the payment of my debts aforesaid," one-sixth of what was left to certain daughters by his former wife, and the remainder, after the payment of certain specified legacies, to his sons of the former marriage.

Thereafter, in October, 1906, Hall commenced an action for divorce, charging his wife with adultery, in which she answered, denying the charge made against her. During the pendency of this action the parties, guided by their attorneys, entered into certain negotiations for the settlement of their property rights in the event a divorce was granted in the pending action. By the arrangement then made Hall agreed to pay to his wife the sum of $4,225 in money and to convey to her certain real estate in the city of Hutchinson, and the wife agreed to convey to him a small tract of land near Stewart, their place of residence. The deeds were duly executed, and the money so agreed to be paid delivered to a third person, to be by him delivered to the parties in accordance with the terms of the settlement immediately upon the

entry of a decree of divorce. It was further understood and agreed, as a part of the settlement, that the wife should amend her answer in the divorce action by including therein a cross-bill for a divorce against plaintiff on the general ground of his habitual drunkenness. Thereafter her answer was duly amended accordingly. The cause was brought on for trial, and resulted in a decree of divorce based upon the allegations of defendant's cross-bill. The settlement of the property rights was then completed by the payment to the wife of the money and the delivery of the deeds of the property referred to. This was completed on May 21, 1907. Mrs. Hall claimed no alimony on the final hearing of the divorce case, and the judgment therein awarded to her no pecuniary relief, not even the costs of the action. The amount received by Mrs. Hall on the settlement amounted to practically one-third of the property then owned by Hall.

Thereafter, on June 22, 1907, thirty days after the divorce and settlement, Hall, without having made any change or modification of his will, by which he gave to "my wife, Matilda Hall," one-third of all his property, suddenly died. C. R. Donaldson was named in the will as executor, and he properly presented it to the probate court for allowance and probate. At the hearing of his petition certain of the children of deceased appeared and contested the allowance of that part of the will devising and bequeathing to Mrs. Hall one-third of testator's property, on the ground that the will in that respect was, by the settlement and adjustment of the property rights of the parties in the divorce action, revoked and annulled by implication of law. Mrs. Hall also appeared as intervener and claimed under the will. The probate court sustained the contention of contestants, holding that the provisions made for Mrs. Hall were revoked by operation of law, but admitted the balance of the will to probate. Mrs. Hall appealed to the district court, where the same conclusion was reached, and she then appealed to this court from an order of the district court denying her motion for a new trial.

The assignments of error challenge certain of the findings of the trial court and raise the single question whether the divorce and property settlement operated by implication of law to revoke the provisions made in deceased's will for his wife. Our examination of the record leads to the conclusion that all the findings of fact are sustained by the

evidence. It would serve no useful purpose to enter into an extended discussion of the evidence, and we therefore refrain.

We come, then, directly to the main question in the case, namely, whether Hall's will was, to the extent of the provisions therein made for his wife, revoked by implication of law.

An express revocation of a will involves an inquiry into the intention of the testator, and generally the manner and what acts will constitute a revocation in fact are expressly prescribed by statute. Page, Wills, 272; 2 Current Law, 2091; In re Knapen's Will, 75 Vt. 146, 53 Atl. 1003, 98 Am. St. 808; R. L. 1905, § 3665. At common law certain changes in the condition and circumstances of the testator worked a revocation by implication, and it was formerly held that this was prima facie only, and open to rebuttal by proof that the testator intended his will to remain, notwithstanding the change in his circumstances. The rule, however, by all modern authorities, is that the presumption of law arising from the changed conditions is conclusive, and no evidence is admissible to rebut it. Marston v. Roe, 8 Ad. & El. 14; Gay v. Gay, 84 Ala. 38, 44, 4 South. 42; Hoitt v. Hoitt, 63 N. H. 475, 498, 3 Atl. 604, 56 Am. 530; Hudnall v. Ham, 183 Ill. 486, 56 N. E. 172, 48 L. R. A. 557, 75 Am. St. 124; 30 Am. & Eng. Enc. (2d Ed.) 644, and cases cited. The rule had its origin with the ecclesiastical courts of England, and was later adopted as a part of the common law. 4 Kent, Com. 524; Brody v. Cubitt, 1 Doug. 31. And it is the settled law in nearly all the states of this country, where not abrogated by statute. 30 Am. & Eng. Enc. (2d Ed.) 643.

Our statutes on the subject provide that no will shall be revoked, except in the manner there pointed out, namely, by some other writing executed by the testator with the same formalities with which the will itself is required to be executed, or by burning, obliterating, or destroying the same with the intention of revoking it, or by the destruction thereof by a third person at the request of the testator and in the presence of witnesses. To these restrictions is added, "But nothing in this section shall prevent the revocation implied by law from subsequent change in the condition or circumstances of the testator," by which the common-law rule of implied revocation is affirmatively adopted as the law of this state. R. L. 1905, § 3665.

Counsel for appellant do not contend that the common law is not in

force in this state, but do claim that the facts here presented do not bring the case within the rule as properly understood and limited. There is much conflict in the adjudicated cases, both in England and in this country, as to the scope and limitations of the rule. In other words, authorities are not agreed respecting the character of the "change in the condition or circumstances of the testator" essential to give rise to the legal presumption of revocation. Some courts have restricted the rule to marriage and birth of issue in the case of a man, and mere marriage in the case of a woman. Wogan v. Small, 11 Serg. & R. (Pa.) 141; Jones' Estate, 211 Pa. St. 364, 60 Atl. 915, 69 L. R. A. 940, 107 Am. St. 581; Page, Wills, 280.

Chancellor Kent gives a broad and comprehensive definition of the rule in the following language: Implied revocations "are founded upon the reasonable presumption of an alteration of the testator's mind, arising from circumstances since the making of the will, producing a change in his previous obligations and duties." 4 Kent, Com. 521. While cases involving a changed condition resulting from the marriage of the testator or testatrix have been before the courts most frequently, and new conditions so brought about have received the most attention, the authorities generally do not limit the application of the rule to a state of affairs thus created. To restrict the rule to such cases would narrow and unduly circumscribe its purpose. The different conditions which bring the rule into operation are fully given, and authorities cited, in a valuable note to Graham v. Burch, 28 Am. St. 344 (47 Minn. 171, 49 N. W. 697). It is there stated that a revocation by implication may result from a change in the property of the testator, or from a change in his family, as by marriage, or in the beneficiaries named in his will. See also 30 Am. & Eng. Enc. (2d Ed.) 644, et seq.

Of course, a change in respect to property or family relations resulting from the act of the testator should be of a nature to justify the inference, arbitrary though it be, that he intended to revoke his will, either in whole or in part, or that a moral or legal duty not only would require but prompt a change in the disposition of his property from that made in the will. In other words, the rule, if accorded substance and merit, must serve the purpose of doing by implication what the testator should, in justice to those entitled to his bounty, have done, had his attention been directly called to the matter after the change of circum-

stances and before his death. The rule, it is true, has not generally been extended so far. At least the tendency of the reported cases has been to restrict, rather than enlarge, its scope.

It was formerly held that the marriage of a man did not at common law revoke his will, whether executed before marriage or during the continuance of a previous marriage. Christopher v. Christopher, 4 Burr. 2182; Bowers v. Bowers, 53 Ind. 430; Goodsell's Appeal, 55 Conn. 171, 10 Atl. 557. But that doctrine has been modified, either by statute or decisions of the courts, both in England and the several states in this country. While within the application of the rule the marriage of a man did not of itself revoke his pre-existing will, his marriage and birth of issue did so operate. Note to Young's Appeal, 80 Am. Dec. 518. The marriage of a woman, however, has always been held to revoke her will, without reference to the birth of issue, and this because of her legal incapacity after marriage to dispose of her property. But this has also been changed by statute. Kelly v. Stevenson, 85 Minn. 247, 88 N. W. 739, 56 L. R. A. 754, 89 Am. St. 545. But, as already suggested, the courts are not in full harmony in defining the scope of the "changed conditions or circumstances" giving rise to the rule of implied revocation.

Counsel for appellant in the case at bar insist that it should be limited to such changes as arise from the marriage of the man and the subsequent birth of issue, and to that arising from the marriage of the woman with or without subsequent issue. If we adopt counsel's suggestion, and limit the rule to the instances mentioned, then the saving clause of the statute above quoted would have nothing whatever to act upon, for by section 3666, R. L. 1905, it is expressly declared that the marriage of the testator, and this necessarily includes man or woman, shall revoke a previously executed will. No reference is made to the birth of issue. Simple marriage annuls a previous testamentary disposition of property. So that, if counsel's contention be sound, the clause in section 3665, reserving the common-law rule of revocation by implication, would serve no purpose. We must therefore look further, and inquire whether the facts here disclosed, the divorce and property settlement, bring the case within the rule.

Very few cases are found where the precise question has been presented or decided, though it seems to be settled that a divorce alone

does not revoke a previously executed will. In re Brown's Estate (Iowa) 117 N. W. 260; Baacke v. Baacke, 50 Neb. 18, 21, 69 N. W. 303; Charlton v. Miller, 27 Oh. St. 298, 22 Am. 307; Jones' Estate, 3 Am. & Eng. An. Cas. 221, and note; Card v. Alexander, 48 Conn. 492, 40 Am. 187; In re Boddington, 22 Ch. Div. 597, 25 Ch. Div. 685. It is probable that a divorce granted at the suit of the wife, with alimony expressly decreed to be in lieu of all her rights in the property of the husband, testamentary and otherwise, would by implication of law revoke the will of her husband in so far as it made provision for her (1 Underhill, Wills, 265), though In re Brown's Estate, supra, seems to hold otherwise. Lansing v. Haynes, 95 Mich. 16, 54 N. W. 699, 35 Am. St. 545, and Baacke v. Baacke, supra, are the only cases to which our attention has been called where facts like those in the case at bar have been passed upon.

In the Michigan case it was held that when, at the time a decree of divorce is granted, the parties to the action settle and adjust their property rights by mutual agreement, without mentioning wills theretofore made by them, the decree of divorce and settlement constituted an implied revocation of the wills so theretofore made. The court there remarked that by the decree of divorce and property settlement the parties became strangers to each other, neither thereafter owing to the other either legal or moral obligations or duties, and that there was therefore a complete change in their relations, within the rule of implied revocation of wills. The Nebraska case holds to the contrary; but the decision is apparently upon the theory of a strict application of the rule, and the fact of the property settlement appears not to have been deemed of much consequence. Careful reflection and consideration of the subject leads us to the rule of the Michigan court. It appears to us more in accord with the reason and basis of the law, in harmony with the elementary rule of right and wrong, conflicts with no equitable or substantial right of the woman in such case, and is opposed only by a strict adherence to some of the older views on the subject, based, however, upon the commendable purpose of sustaining the directions of a person respecting the disposition of his property, left in the form of a solemnly executed will, who by reason of his death is no longer able to speak for himself or give further orders or directions in that behalf.

We recognize the importance of upholding the last wills of deceased persons, and we recognize the wisdom, also, of the rule of implied revocations by a change in the condition and circumstances of the testator. If the rule can have any proper or legitimate application in any case, it would seem to cover a case of this kind. Here the testator brought suit against his wife, charging her with adultery. He was then an old man, seventy years of age, and with a view to a severance of all relations with his wife he entered into an agreement by which she was to procure a divorce without contest by him, upon the consummation of which he made over to her in property and money practically what she would have received under the previously executed will, had he then died, and precisely what she would have received under the statute had he died intestate. He in effect withdrew his charge of infidelity and voluntarily settled upon her all she could or would have received under the will.

He died within thirty days thereafter, without having changed his will, and the wife now comes into court asking for another third of his property, leaving the remainder, or one-third, to his children by his first wife. If this is not a change of his condition and circumstances, within the meaning of the law, then the rule of implied revocation upon that ground is really without much substance or merit. His obligations to his wife, legal, moral, or otherwise, wholly ceased at the time of the divorce and settlement. By the settlement he fully discharged all legal duties, and the inference that he intended the allowance in full of all future rights ought in justice and good conscience to be the legal conclusion. We so hold. Whether the fact that the testator in such a case permits his will to remain unchanged by express revocation for a number of years after the divorce and settlement would militate against the conclusion of implied revocation we need not determine. Testator in this case died within thirty days after the settlement, and his failure expressly to revoke within that time certainly creates no inference that he intended his will to continue in force.

The case of In re Brown's Estate, supra, wherein the Iowa supreme court held that a decree of divorce, with an award of alimony to the wife was not an implied revocation of the will of the husband, is not in point. The court distinguishes that from the Michigan case on the

ground that the property settlement was not the voluntary act of the husband, and therefore no legitimate basis for an inference of an intention on his part to revoke his former will.

Order affirmed.