### Clevenger v. Stewart.

(Decided June 25, 1926.)

#### Appeal from Lawrence Circuit Court

1.  Appeal and Error.—Evidence, though copied into record by clerk, cannot be considered by appellate court, in absence of bill of exceptions.

2. Wills.—On appeal in will contest to circuit court, whereon no pleadings were filed, filing certified copy of judgment of county court refusing probate supports judgment of affirmance.

3. Wills.—Marriage of woman held to revoke her will under Ky. Stats., section 4832, notwithstanding section 2147 and antenuptial agreement that neither party have any interest in other's estate before marriage.

C. F. SEE, JR., and M. S. BURNS for appellant.

W. T. CAIN, T. S. THOMPSON and J. F. STEWART for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

On March 17, 1924, a paper purporting to be the last will and testament of Mrs. Mary J. Evans Taylor, deceased, was offered for probate in the Lawrence county court. Probate there being refused, the matter was appealed to the Lawrence circuit court with like result. From this last judgment the propounder brings this appeal.

The case was tried in the circuit court on law and facts without the intervention of a jury. Although given opportunity to do so, the appellant filed no bill of exceptions. The clerk has copied into the record sent here what purports to be the evidence heard by the lower court on the trial of this case, but, under the many decisions of this court, it is obvious that it cannot be considered in the absence of a bill of exceptions, and that the only question we have before us is whether or not the pleadings support the judgment. Kavunedas v. Long, 205 Ky. 321, 265 S. W. 790. No pleadings were filed in this case. A certified copy of the judgment of the county court refusing to admit to probate the paper in question as the will of Mrs. Evans Taylor was filed in the circuit court as the foundation of the proceeding there. It is obvious that the judgment of the county court so filed supports the circuit court's judgment.

However, we have examined what purports to be the evidence heard by the trial court in this case, and, if it be such evidence, the trial court committed no error in refusing to admit to probate the paper in question. From this purported evidence we gather that on the 25th day of April, 1912, Mrs. Mary J. Evans, then a widow, executed a last will and testament; that on September 2, 1916, she intermarried with William Taylor; that prior

to their marriage they entered into an antenuptial contract which was reduced to writing on September 10, 1916, after their marriage; that by this antenuptial contract the parties agreed that "neither of us is to have any interest in each other's estate before our marriage;" that just prior to the marriage Taylor conveyed to his relatives practically all, if not all, of his estate; that he died some time after the marriage; that Mrs. Taylor, who had been Mrs. Evans, made no claim to any part of his estate, and that she died thereafter.

By section 4832 of the Kentucky Statutes it is provided:

"Every will made by a man or woman shall be revoked by his or her marriage except a will made in exercise of a power of appointment when the estate thereby appointed would not, in default of such appointment, pass to his or her heir, personal representative, or next of kin."

In the case of Ransom v. Connelly, 93 Ky. 63, 18 S. W. 1029, this section of the statutes was before this court for construction on these facts: One Vest in 1854, when married made a will. Thereafter his wife died and in 1862 he married a second time. Shortly before this marriage, Vest and his intended spouse entered into an antenuptial contract. Vest died in 1885 leaving his second wife as his widow and without having destroyed the will he had made in 1854. Both the county court and the circuit court admitted this will to probate, but on appeal to this court such judgment was reversed, with directions to reject the will. We held that the statute was mandatory and that the marriage of 1862 revoked the will of 1854 despite the antenuptial contract entered into a short while previous to the marriage. The same result was reached in Stewart v. Powell, 90 Ky. 511, 14. S. W. 496, and to the same effect is Biggerstaff v. Biggerstaff's Admr., 95 Ky. 154, 23 S. W. 965, which case, however, went off on another point. Both the Stewart and Ransom cases *supra* distinguish the case of Stewart v. Mulholland, 88 Ky. 38, 10. S. W. 125, relied on by appellant, and, as the distinction is so well pointed out in both of these cases, it need not be again repeated here.

Appellant, however, seems to have the idea that section 2147 of the statutes, empowering married women with the same power to make a will as has a *feme sole,* in some way affects section 4832 *supra.* We are unable

to follow appellant's reasoning in this respect. In the Ransom case *supra*, the will in question was that of a husband who at all the times involved had the right to make a will. Clearly the testatrix in this case is in no better position than was the testator in the Ransom case. Section 2147 at the best does no more than put Mrs. Taylor on the same plane as was Ransom. This reasoning is well worked out in the case of Lathrop v. Dunlop, 4 Hun. 213 (N. Y.). In that case the facts were: Jessie A. Dunlop, a resident of New York, executed her will. Subsequently she entered into an antenuptial agreement, by the terms of which she retained full control of her own property. A few days afterwards she married, and about two months after her marriage she died. Her will was presented for probate and probate was refused under a statute of New York, practically the same as section 4832 of our statutes. It was urged that the New York married woman's acts had in some measure superseded that part of the law of New York similar to section 4832 of our statutes. In speaking to that point the court said:

> "We see nothing in the so-called married woman's acts which should modify this statute. The fact that married woman now has power to make a will does not affect the reason of the law, which is mentioned above. To illustrate this, the previous sections of the statute declare that, in certain cases, the marriage of a man and birth of children shall be deemed a revocation of his will. This is not because he had not the testamentary power, but because, as a general rule, the change of circumstances prevents his will, made previously, from expressing his wishes."

In Brown v. Clark, 77 N. Y. 369, the question was presented whether the provision of the New York law declaring the will of unmarried women revoked by their subsequent marriage was not abrogated by the subsequent statute conferring upon married women testamentary capacity. The court said:

> "The married women acts confer testamentary capacity upon married women, but they do not undertake to interfere with or abrogate the statute prescribing the effect of marriage as a revocation.

It was quite consistent that the legislature should have intended to leave the statute of 1830 in force, although the new statutes took away the reason upon which it was based. The legislature may have deemed it proper to continue it for the reason that the new relation created by the marriage would be likely to induce a change of testamentary intention, and that a disposition by a married woman of her property by will should depend upon a new testamentary act after the marriage.''

As the case before us is indistinguishable from the Ransom case *supra*, the trial court committeed no error in holding that the will of Mrs. Evans Taylor was revoked by her marriage to Taylor in 1916, despite the antenuptial contract entered into by her and Taylor.

However, because of the absence of the bill of exceptions the only question before us is whether or not the judgment is supported by what was filed as the foundation of appellant's case in the trial court. As it is, such judgment must be and it is affirmed.