## IN RE ESTATE OF CHARLOTTE ANN KELLY.
## EDWARD J. KELLY v. GEORGE HUMBER.[1]

March 29, 1934.

No. 29,807.

[1]Reported in 254 N. W. 437.

J. A. *Mansfield* and *Godley & Olson,* for appellant.

H. G. *Dressel* and *Moonan & Moonan,* for respondent.

*DEVANEY, Chief Justice.*

Appeal from a judgment which affirmed an order of the probate court admitting a certain instrument to probate and declaring the same to be the last will and testament of Charlotte Ann Kelly.

Appellant, Edward J. Kelly, and the testatrix, Charlotte Ann Humber, were married November 3, 1925, and lived together as husband and wife until June, 1931, at which time the wife died. On October 27, 1925, seven days before the marriage, Charlotte Ann made the last will and testament here in question. The will was deposited in the probate court, where it remained until after her death. Appellant alleges that he did not consent to the making of the will, did not join therein, and testified that he had no knowledge until after Charlotte Ann's death of the fact that such a will had been made. It is admitted that the testatrix married after making the will. Appellant contends that this subsequent marriage revoked the will under 2 Mason Minn. St. 1927, § 8742. The trial court found, however, that prior to the marriage appellant and Charlotte Ann had entered into an antenuptial contract wherein it was agreed that each party was to keep his own property, that neither was to inherit from the other, and that either might dispose of his property in whatever manner he chose. He further found that because of such antenuptial agreement 2 Mason Minn. St. 1927, § 8742, had no application and hence that the subsequent marriage did not revoke the will.

Two questions appear:

(1) Was the evidence sufficient to support the finding that an antenuptial contract had been made?

(2) Assuming the existence of such a contract, was the will nevertheless revoked by the subsequent marriage, under 2 Mason Minn. St. 1927, § 8742?

■ The only proof of the existence of the antenuptial contract was the testimony of various witnesses, received over appellant's objection, to the effect that the testatrix, during her life, had stated to them that such an agreement existed. The written agreement itself was not produced, and there was no clear or definite evidence of the exact terms thereof. But, because of the position we are taking on the second question, we will assume that the evidence was sufficient to support a finding that there was such an antenuptial contract. Hereafter we will treat the case in all respects as though there had been such a valid agreement whereby each party was to have power to dispose of his own property after marriage and neither was to inherit from the other.

■ At common law a man's will was not revoked by a subsequent marriage unless and until there was issue of the marriage. However, a subsequent marriage was held to revoke a woman's will regardless of whether she had issue. See Hulett v. Carey, 66 Minn. 327, 338-339, 69 N. W. 31, 34 L. R. A. 384, 61 A. S. R. 419; Gardner, Wills (2 ed.) §§ 87, 88, pp. 249-252; 1 Schouler, Wills (6 ed.) §§ 639-643, pp. 732-740. But there was an exception to the common law rule as applied to women. A woman's will was not revoked by subsequent marriage if made pursuant to an antenuptial agreement giving her power to dispose of her own property. Doe v. Staple, 2 T. R. 684, 1 Rev. Rep. 595, 100 E. R. 368; Taylor v. Rains, 7 Mod. 147, 87 E. R. 1155; see Kelly v. Stevenson, 85 Minn. 247, 252, 88 N. W. 739, 56 L. R. A. 754, 89 A. S. R. 545.

The early history of the law in this state on this subject is well set forth in Kelly v. Stevenson, 85 Minn. 247, 248, 88 N. W. 739, 56 L. R. A. 754, 89 A. S. R. 545. The common law rule as to women was in force in this state until 1869, at which time the same was abrogated by the enactment of L. 1869, c. 61, § 1, conferring full testamentary capacity upon married women. Prior to that time married women had possessed merely a qualified and limited testamentary capacity. G. S. 1866, c. 47, § 1. The original reason for the old common law rule that subsequent marriage revoked a woman's will was that after marriage she lost her legal capacity to make a will or to dispose of her property. After 1869 this in-

capacity disappeared in this state. Hence it was held in Kelly v. Stevenson, 85 Minn. 247, 88 N. W. 739, 56 L. R. A. 754, 89 A. S. R. 545, that since the reason for the common law rule had disappeared the rule itself should be abandoned. Consequently, in that case a subsequent marriage was held not to revoke a woman's will. That case made it clear and stressed the point (at page 249) that the common law rule in this respect had been abrogated in 1869 and no longer prevailed in this state. This statement leads to the inevitable conclusion that since 1869 the subject of revocation of wills by marriage has been entirely governed by statute and is not controlled by common law principles.

In 1905, three years after the Kelly decision, 85 Minn. 247, 88 N. W. 739, 56 L. R. A. 754, 89 A. S. R. 545, what is now 2 Mason Minn. St. 1927, § 8742, as amended by L. 1909, c. 53, § 1, was enacted. It provides:

"If, after making a will, the testator marries, the will is thereby revoked, and if the testator after making the will is divorced from the bonds of matrimony, all provisions in such will in favor of the testator's spouse, so divorced, are thereby revoked."

The word "testator" as herein used includes women as well as men. See Donaldson v. Hall, 106 Minn. 502, 507, 119 N. W. 219, 20 L.R.A. (N.S.) 1073, 130 A. S. R. 621, 16 Ann. Cas. 541. Respondent contends that the enactment of this statute restored or revived the old common law rule as to women's wills in this state and extended the same to apply to men's wills as well. Hence he urges that the common law exception that subsequent marriage did not revoke a woman's will where made pursuant to an antenuptial agreement is again the prevailing law in this state. We cannot agree to this. The premise is unsound. There is nothing in the wording of the statute which would indicate an intention to restore the common law rule, and the Report of the Statute Revision Commission for 1905, Part III, c. 76, p. 30, indicates quite clearly that just the opposite was intended. That commission said:

"Under revocation of wills, we have recommended one change to which attention is called. In Sec. 43 it is proposed that the mar-

riage of a testator shall revoke his will. *Heretofore we have retained the common law upon the subject.* New York and other states made the change some time since." (Italics ours.)

This report is the only evidence that we have been able to find of what the legislature intended to accomplish by the enactment of this statute. A search of the house and senate journals for 1909, when the 1905 act was amended, sheds no light on whether the legislature intended to restore the common law or otherwise. From what was said in the Kelly case, 85 Minn. 247, 88 N. W. 739, 56 L. R. A. 754, 89 A. S. R. 545, and from this brief report of the 1905 Revision Commission, it seems clear to us, however, that the legislature intended permanently to abandon the common law rule in this state as to revocation of wills by marriage. Consequently, since the common law rule is not now in force in this state, neither is the old common law exception within which respondent attempts to bring the case at bar. To effectuate the result desired by respondent it will be necessary to enact an express statute so providing. Under our present statute all wills are revoked by marriage. The statutory rule seems in accord with sound policy when it is considered that marriage is such a change of circumstance as is bound to affect the object of a testator's bounty. Hence this court will not arbitrarily make exceptions to this rule.

Other courts under similar statutes have taken the same view as we do. In Lathrop v. Dunlop, 4 Hun, 213, 214, affirmed 63 N. Y. 610, decided under the New York statute from which the one in this state was copied, it was held that a woman's will was revoked by subsequent marriage despite an antenuptial agreement. Other cases of similar purport are Hudnall v. Ham, 183 Ill. 486, 496, 56 N. E. 172, 48 L. R. A. 557, 75 A. S. R. 124; Clevenger v. Stewart, 215 Ky. 432, 434, 284 S. W. 1106; Craft's Estate, 164 Pa. 520, 522, 30 A. 493. For the most part the cases relied upon by respondent appear not to have been decided under a statute such as we have in this state. Possibly Osgood v. Bliss, 141 Mass. 474, 6 N. E. 527, 55 Am. R. 488, which was decided under an Indiana statute similar to ours, is distinguishable from the one at bar. If it is considered to be *contra,*

we choose not to follow it but rather to follow the rule of the above cited cases.

Reversed.